[McCormick v. Badham.]

# McCormick *v.* Badham.

## *Assumpsit.*

.(Decided November 7, 1914.   Rehearing denied December 17, 1914.
67 South. 609.)

1. *Contract; Dependent or Independent Covenants.*—Whether or not stipulations in contracts are dependent or independent covenants depends on the intention of the parties, ascertainable from the contract and the surrounding circumstances at the time of its execution, though it is presumed that performance of respective acts shall be in the order of time indicated by the covenants.

2. *Same; Instruction; Intention.*—In construing a contract, the court will endeavor to ascertain the intent of the parties, and give effect thereto, if lawful.

3. *Same; Mutual and Dependent Covenants.*—Where a thing is to be done by one party as the consideration of a thing to be done by the other, the covenants are mutual and dependent, if to be performed at the same time, and, where one is first to be performed as the condition of the obligation of the other, that which is first to be performed must be done or tendered before suit is maintainable against the other party.

4. *Trial; Directing Verdict; Justification.*—The giving of the general affirmative charge for defendant on an amended count of a complaint cannot be justified on the ground that error was committed in allowing the count to be amended over objection.

5. *Corporation; Sale of Stock; Contract.*—A contract of sale of corporate stock providing that the stock shall be paid for in dividends of the corporation after payment of its present indebtedness, but the price shall bear interest only after accrual of dividends, that in the event the seller shall desire to sell his interest in the corporation within a specified time he shall have an option to purchase the stock of the buyer for a certain sum, and that on the buyer voluntarily severing his connection with the corporation within a specified time, he shall surrender stock, makes payment of the price · from accruing dividends, after discharge of the indebtedness, a condition precedent to any obligation on the seller to transfer the stock or to any right in the buyer to require the transfer.

6. *Same.*—Where the seller of stock sold the same but refused to account to the buyer with right to demand a transfer on payment of the price for the stock out of the dividends within a specified period, and the buyer agreed shortly before the expiration of that period that the seller might sell the stock to such third person and account for the price obtained, the promise of the seller to account was supported by a consideration consisting of the buyer's surrender of his right to demand a transfer of the stock on payment therefor from divi-·dends, and the buyer could enforce the promise unless he consented to a rescission of the sale made by the seller.

7. *Same.*—Where stock was to be paid for in dividends of the corporation after the discharge of a present indebtedness, and the seller sold the stock to another before payment of the price, the seller did not thereby relieve the buyer of the obligation to pay the price from dividends, and the buyer could not maintain an action for breach of the contract without first performing the condition precedent of paying the price from the dividends.

8. *Same; Action for Breach; Performance of Condition Precedent.* —A complaint in an action on a contract which requires performance by plaintiff within a specified period, which alleges performance before bringing the action, which action was instituted sometime after the specified period, does not allege performance of the condition precedent within a stipulated period.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Assumpsit by A. H. McCormick against Henry Badham. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

JAMES A. MITCHELL, for appellant.

PERCY, BENNERS & BURR, for appellee.

MCCLELLAN, J.—On July 7, 1904, H. L. Badham, appellee, and A. H. McCormick, appellant (plaintiff below) executed a contract, of which the following were the substantial terms: "Witnesseth, that A. H. McCormick, of Birmingham, Ala., and the Dorchester Lumber Company, Badham, S. C., have entered into a certain contract as to his connection with and services to said Dorchester Lumber Company, to which contract this agreement is made a part.

"It is understood and agreed by and between H. L. Badham and A. H. McCormick that, as part of said contract, H. L. Badham will sell to A. H. McCormick $4,500.00 of stock of said Dorchester Lumber Company, to be paid for in dividends or earnings of said Dorchester Lumber Company after its present indebtedness of approximately $75,000 has been discharged, and that

purchase price of said stock shall bear interest at 6 per cent. only after said dividends begin to accrue.

"It is further understood and agreed that in the event H. L. Badham should desire to sell his interest in said Dorchester Lumber Company, within two years from date he shall have option of purchase of said $4,500.00 of stock held by A. H. McCormick for sum of $2,500.00.

"It is further understood and agreed that in the event A. H. McCormick should, of his own accord, sever his connection with the Dorchester Lumber Company within in two years from date, he shall surrender said $4,500.00 of stock."

McCormick performed the personal services contemplated by his engagement, and the salary stipulated for was paid him.

At the time of the execution of the contract quoted H. L. Badham and his brother, V. C. Badham, each owned 500 shares of the 1,000 shares of the capital stock of the Dorchester Lumber Company, operating at Badham, S. C. The corporation was heavily indebted, and for a part of this indebtedness H. L. Badham was an indorser. The provision made in the contract quoted for the sale of 45 shares of H. L. Badham's half of the capital stock was to serve, and did serve, as an inducement to McCormick to engage for his personal services in an effort to improve the operating and financial condition of the concern. Under the evidence and under the terms of the contract, it was in the nature of, if not in fact, a reward for successful results.

The plaintiff thus describes the acts and conduct of H. L. Badham, in respect of the shares referred to in the instrument, at the time the contract was made: "Mr. Badham retained the stock; put in an envelope at the time of the contract. There were 45 shares of $100 each. The price at which the stock was to be paid

for was agreed to be at par value. * * * The 45 shares of stock he had sold to me were at that time in Henry L. Badham's hands. * * * The stock I referred to in my direct testimony that Mr. Badham put up in an envelope was the stock he assigned to me at the time the contract was made. I did not see the stock; he explained to me that he put it in the envelope to keep it. I do not remember seeing any certificate for the 45 shares. I do not remember about the certificate. The fact is that Mr. H. L. Badham was to give me $4,-500.00 of his stock. * * * I did not read the certificate at the time it was put in the envelope. He showed it to me, and said: 'Here is the stock; I will put it in the envelope and keep it.' I did not know what it was; I took his word for it."

The concern remained in a bad financial condition during plaintiff's service therewith; due, he contends, to the unwise dominance of its direction and management by V. C. Badham. No dividends are shown to have accrued out of which, under the contract of July 7, 1904, payment for the 45 shares was to be made. It is not shown that the indebtedness of the corporation mentioned in the contract of July 7, 1904, was paid.

By this action the plaintiff sought, in counts other than that numbered 12, redress or recompense for the failure of H. L. Badham to perform his alleged contract to invest plaintiff with the title to the 45 shares or to account for its value under the contract of July 7, 1904.

The trial court gave effect in its rulings, adverse to plaintiff, to the view that the payment for the stock with dividends accruing after the discharge of the indebtedness mentioned in the contract of July 7, 1904, was a condition precedent to plaintiff's right to the 45 shares of stock; or, to state it otherwise, to the obliga-

tion on defendant to perfect its transfer to plaintiff. The legal principles governing the inquiry here presented are, of course, well established. It is their application, only, that affords the basis of controversy in this connection.

(1) Whether parties to a contract have stipulated as for dependent or independent covenants, in respect of the obligations assumed thereunder, is, of course, a matter of intention, common to both, to be collected from the contract itself, together with the circumstances surrounding the parties at the time and those attending the engagement they make, and in the light of the common sense of it.—*Nesbitt v. McGehee,* 26 Ala. 748, 755, 756; *Fulenwider v. Rowan,* 136 Ala. 287, 34 South. 975; *Loud v. Pomona Land Co.,* 153 U. S. 564, 14 Sup. Ct. 928, 38 L. Ed. 822.

(2) "The parties have an undoubted right, if they please, to make their covenants dependent or independent throughout, or to make the covenants independent as to one thing, and dependent as to another. They have a right to mould their contracts to suit their mutual convenience and interests; and, when the courts can ascertain their meaning, they are so to construe the contract as to give effect to that meaning, provided the purpose be lawful. They must be held to have intended the performance of their respective acts, in the order of time indicated by their covenants."—*Nesbitt v. McGehee, supra.* The precedency of covenants "must," as said by Lord Mansfield in his quotation in *Nesbitt v. McGehee,* "depend on order of time in which the intent of the transaction requires their performance."

(3) "Where a specified thing is to be done by one party as the consideration of the thing to be done by the other, it is undeniably the general rule that the covenants are mutual, and are dependent, if they are

to be performed at the same time; and if, by the terms or nature of the. contract, one is first to be performed as the condition of the obligation of the other, that which is first to be performed must be done, or tendered, before that party can sustain a suit against the other."—*Phillips Const. Co. v. Seymore*, 91 U. S. 646, 650 (23 L. Ed. 341) ; *Loud v. Pomona Land Co., supra.*

(4) Our interpretation of the contract accords with that prevailing in the court below, viz., that the payment of the price ·for the stock with dividends accruing thereon, after the indebtedness mentioned had been discharged, was a condition precedent to any obligation on Badham to transfer the stock to McCormick, or to any right in McCormick to require a transfer thereof by Badham to him. The terms of the major, first provision of the contract, relating to the sale of the stock, shows an unmistakable intent to engage to sell in the future, upon the contingencies stipulated, thereby entirely refuting any idea of consummating a sale in præsenti with only a postponement of the payment for the stock. The engagement was to sell when the dividends accruing paid Badham $4,500. Any other construction would contradict the terms of the major provision, expressing the dominating purpose, of the contract. The other clauses—viz., that assuring Badham the two-year option to buy this stock if he (Badham) desired to sell his interest in the corporation, and that stipulating for McCormick's surrender of the stock if he voluntarily severed his connection with the enterprise—must, necessarily, have been predicated of the effected purchase of the stock by McCormick, under the anterior provisions of the contract, which made precedent conditions to be met by him in perfecting his right to the stock. There is no inharmony of idea or of purpose created by the major, first provision in this con-

nection and the subsequent clauses last referred to. It would be entirely unreasonable, and opposed to the manifest purpose the parties entertained, to interpret the instrument, which must be viewed as a whole, as if the first clause invested McCormick with the title, the right to the stock, regardless of the anticipated payment for it through accruing dividends. Nothing could be clearer, under the contract and under the evidence, than that McCormick's contribution of diligence and skill to the enterprise's conduct should afford the sum out of which his promised stockholdership should be earned and paid for. The conclusion is unescapable that, until the conditions precedent were met, McCormick had, under the contract of July 7, 1904, no right to the stock, and no obligation passed to or was upon Badham to effect its transfer to McCormick. Nor was McCormick in any position, under that contract, to implead Badham on any account in the premises until the conditions precedent had been performed, and his right to demand the stock had been perfected. There was therefore no error in sustaining demurrers taking this objection to counts of the complaint. Additionally, the evidence showed without dispute that the stock was not paid for by dividends declared and accruing after the discharge of the indebtedness mentioned in the contract.

The twelfth count declares upon the breach of a subsequent agreement between defendant and plaintiff, alleged to have been made in the month of February, 1907. Its substance is this: That H. L. Badham was negotiating to sell his interest in the corporation to his brother, V. C. Badham, at and for $200 the share, and, in pursuit of this design, H. L. Badham, it is averred, "asked and obtained plaintiff's consent to include the said 45 shares which defendant had sold to plaintiff

in the said sale, and in consideration thereof the defendant agreed with the plaintiff to account to the plaintiff or to settle with the plaintiff for the price of said stock; and the plaintiff avers that the defendant did thereafter, during the year 1907, close the said trade for the sale of the said 500 shares of the stock in the said company to the said V. C. Badham at and for the price of $200 a share, and the defendant was paid a large part of the purchase money therefor." The further allegation is that H. L. Badham failed and refused to account to the plaintiff according to the agreement averred.

(5) The demurrer to this court was overruled. So there is no question of its sufficiency presented for review. The objection to the allowance of count 12 as an amendment to the complaint was overruled. The propriety of the general affirmative charge given at defendant's instance cannot be justified by recourse to the assertion, even if it were well grounded, that error affected the allowance of count 12 as an amendment.

(6) As we have construed the contract of July 7, 1904, McCormick was without right to demand the transfer of the stock; the conditions precedent not having been performed. So when the agreement of February, 1907, declared on in count 12, was made, he had only a contingent, inchoate, contractual right to impose upon Badham the obligation to sell the stock to him. The opportunity to afford the performance of the conditions precedent was McCormick's contractual due, even though the period (three years) of its availability had nearly expired. The surrender, as it were, of this privilege by McCormick was a sufficient consideration to support Badham's asserted promise to account to McCormick, as is averred in count 12. McCormick testified that the contract of sale between the brothers was

[McCormick v. Badham.]

made, and that the price was $200 a share. There was evidence to the contrary; but the conflict forbade the court's taking from the jury this feature of the issue made by the averments of count 12. There was evidence tending to support every material averment of count 12. The fact, if so, that in consequence of V. C. Badham's inability or failure to meet his obligations under the contract of sale made by H. L. Badham and V. C. Badham, the contract of sale was rescinded by their mutual consent, was, of course, ineffectual to annul the agreement between H. L. Badham and McCormick, alleged and declared on in count 12, and to deprive McCormick of his remedy for a breach thereof, unless McCormick consented to the rescision—a fact not shown in this record.

Our opinion is that the court erred in giving the general charge upon the issues made by count 12. The judgment is reversed, and the cause is remanded.

Reversed and remanded.

SOMERVILLE, DE GRAFFENRIED, and GARDNER, JJ., concur.

ON REHEARING.

McCLELLAN, J.—(7) In brief for appellant on original submission the question of condition precedent, discussed and decided in the opinion ante, was treated as the controlling inquiry presented by the demurrers to all the counts except that numbered 12. It is now insisted that counts 10 and 11 are rendered immune from the effect of the prevailing interpretation of the contract therein declared on because of the averment that H. L. Badham sold the stock in question before the suit was instituted, and thereby disabled himself from performing his part of the contract, even

though the performance of a condition precedent lay at the root of the plaintiff's rights in the premises. The doctrine relied on is that stated as cited in 9 Cyc., p. 698. Even if the averment in these counts had been that Badham sold the stock before the expiration of the period during which the performance by plaintiff of the condition precedent was stipulated to be effected, instead of the allegation that the sale was made before the suit was instituted, it is clear that such action by Badham would not relieve plaintiff of his obligation to perform the condition resting upon him; since that action did not hinder or qualify plaintiff's opportunity to perform the condition precedent.—9 Cyc., pp. 701, 702, subhead "d." Badham's obligation was to make an effective sale of the stock to plaintiff when, under the contract declared on in counts 10 and 11, the plaintiff met the precedent condition of payment therefor in a particular way; and until that condition was performed by plaintiff, or until the performance of the precedent condition was averted by Badham, there was no obligation on Badham in the premises of the breach of which plaintiff could complain. Aside from this, the contract appears to have expressly contemplated the sale of the stock by Badham, in which event he was to pay plaintiff a named sum—viz., $2,500. Counts 10 and 11 were subject to the demurrers. Neither of them carried the essential allegation that the condition precedent, resting on plaintiff, had been performed within the period stipulated; nor was there any averment of fact in these counts wherefrom relief of plaintiff from performance of the condition precedent resulted.

(8) Referring to count 8, the condition precedent established by the written contract required performance within the period stipulated—namely, three years. The allegations of the count is that the indebtedness of the

[Rains v. Patton.]

company was discharged and the dividends or earnings had paid for the stock before suit was brought. Manifestly, these averments did not accord with the precedent condition established by the written contract. The action was not instituted until some time after the three-year period had expired.

No reason appears to alter the conclusions announced in the original opinion. The rehearing is hence denied.

Rehearing denied.