(85 South. 401)

## McCORMICK v. BADHAM.    (6 Div. 845.)

(Supreme Court of Alabama.    Oct. 23, 1919. On Rehearing, Dec. 24, 1919.)

1. **Corporations** &#8660;121(4)—**Count defective as ambiguous in referring to price of stock.**

In assumpsit for breach of an agreement to account for the proceeds of corporate stock in which plaintiff claimed an interest, a count which in referring to the price of the stock did so indiscriminately is open to demurrer, where it could not be told whether the averment had reference to the par value or the alleged sale price.

2. **Appeal and error** &#8660;1040(4)—**Where all issues were presented by another count, sustaining of demurrer to count immaterial.**

The sustaining of a demurrer to one count in assumpsit was immaterial, where every issue presented by such count was raised by others, and no evidence would be admissible under the defective count not receivable under the others.

3. **Contracts** &#8660;88—**Written contract imports consideration.**

A written contract imports a consideration, and it is not necessary that the true consideration be shown.

4. **Corporations** &#8660;116—**Surrender of rights under prior contract consideration for later contract to purchase stock.**

The surrender of plaintiff's rights under a former contract whereby he was to be allowed

---

to acquire shares of stock in a corporation, the shares to be paid for in dividends, is sufficient consideration for a contract whereby defendant was to sell the stock and account to plaintiff for the shares in which he had an interest.

**5. Corporations ⊙⇒121(5) — In assumpsit for breach of contract to account for proceeds of stock sold, letters and other evidence held not admissible.**

Where, on plaintiff's entering the service of a corporation, defendant, a large stockholder, agreed to sell plaintiff certain shares, payment to be made out of dividends, and plaintiff asserted that on his agreement for sale of his shares with defendant's remaining stock, defendant was to account for the difference between par and sale price, a letter from defendant not referring to the transaction was not admissible, nor was evidence concerning defendant's other attempts to sell or conversations between the parties, relative to sale before declaration of dividends.

**6. Corporations ⊙⇒121(7)—Plaintiff's right, on accounting by defendant for his sale of stock contracted to be sold to plaintiff, stated.**

Where plaintiff was entitled to purchase corporate stock from defendant at par, and, on his agreement to defendant's sale to another, defendant agreed to account, the value of plaintiff's inchoate right was not affected by the fact that the shares might have been disposed of to others at different prices.

**7. Appeal and error ⊙⇒1058(1)—Exclusion of evidence harmless in view of that admitted.**

In assumpsit for breach of defendant's agreement to account for difference between par and sale price of corporate stock which plaintiff had the right to purchase, where plaintiff was allowed to testify generally as to the value of the stock, the exclusion of other evidence was harmless.

**8. Corporations ⊙⇒121(6)—On suit for breach of contract to account for sale of stock plaintiff purchased, instructions as to damages held correct.**

Where plaintiff purchased stock owned by defendant, agreed to defendant's sale thereof on his accounting, etc., instructions that if plaintiff did not agree to rescission he could recover the difference between par and the sale price or the reasonable market value not exceeding it *held* correct.

**9. Corporations ⊙⇒121(6) — In suit against seller for breach of contract to account for stock sold with buyer's consent instruction held properly refused as confusing.**

Where defendant agreed to sell plaintiff corporate stock and plaintiff consented to sale thereof to another, a request, in an action for breach of defendant's agreement to account therefor that according to the terms of the original agreement plaintiff could purchase the stock though the dividends were not enough to pay therefor, *held* properly refused as confusing if not misleading.

**10. Corporations ⊙⇒121(6) — Instruction in suit for breach of contract to account for stock sold properly refused for omission of fact for consideration.**

Instruction, in an action for breach of agreement to account for proceeds of sale of stock sold with the buyer's consent to another, *held* properly refused because omitting for consideration the fact defendant was merely to include the stock with other shares and requiring payment regardless of the amount received.

**11. Corporations ⊙⇒118 — Purchaser under agreement held entitled to stock only when paid out of dividends.**

Where it was agreed that plaintiff on becoming connected with a corporation might purchase shares, payment to be made out of dividends, plaintiff could not become entitled to the shares by any other mode of payment.

**12. Corporations ⊙⇒121(6) — Instruction held to properly state defendant's duty to enforce contract of sale for benefit of plaintiff.**

In a suit for breach of agreement to account for stock which plaintiff was entitled to purchase from defendant and agreed defendant might sell, and account for the proceeds, an instruction properly stated that it was defendant's duty to enforce the contract of sale for plaintiff's benefit only in the event he had agreed to sell and settle with plaintiff for its value on agreed basis.

**13. New trial ⊙⇒143(1)—Juror may not testify to occurrences in deliberations.**

On grounds of public policy, a juror on motion for new trial may not testify as to what transpired during the deliberations of the jury, but a juror's affidavit as to extraneous facts which may have influenced the verdict, may be received.

**14. Trial ⊙⇒307(3) — Documentary evidence, though not introduced in evidence, proper for jury to carry to juryroom.**

In an action for breach of an agreement to account for shares of stock which plaintiff was entitled to buy from defendant payment to be made out of dividends, where defendant who sold plaintiff's stock denied any agreement to account, etc., *held*, as the original agreement was made when plaintiff entered the corporation's service, that reports of the corporation's finances, and letters by plaintiff on the subject, were not only admissible but were proper for the jury to take for use in their deliberations, and so the taking of such documents by the jury to the juryroom was not error, regardless of whether they were formally admitted.

**15. Trial ⊙⇒307(3)—Counsel should examine documents proposed to be sent jury.**

It is the duty of counsel to examine documents proposed to be sent the jury for use in their deliberations.

**16. Trial ⊙⇒307(3)—Documents may be delivered to jury where they would otherwise have to take notes.**

Documentary evidence containing statements as to finances of a corporation may be

properly delivered to the jury, where the jurors to have benefit of the computations would otherwise be forced to take notes.

### On Rehearing.

**17. Assumpsit, action of ☜⟹5—Common counts proper as to executed agreement.**

While in case of an express agreement recovery cannot be had on implied agreement, a plaintiff may plead the common counts where the contract is executed and nothing but payment of money remains.

**18. Witnesses ☜⟹414(1)—Letters held admissible as corroborating evidence in action for breach of agreement to account for sale of stock.**

Where plaintiff who was entitled to purchase corporate stock claimed that he agreed defendant might sell such stock with other shares and account for the proceeds, letters written by defendant adverting to the sale were admissible as tending to corroborate plaintiff's testimony denied by defendant.

Appeal from Circuit Court, Jefferson County; Romain Boyd, Judge.

Action by A. H. McCormick against H. L. Badham in assumpsit. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

See, also, 201 Ala. 210, 77 South. 736.

The third, fourth, fifth, sixth, and seventh counts were the common counts. The thirteenth count was as follows:

The plaintiff further claims of the defendant the sum of $10,000 as damages for a breach of contract, for that whereas on, to wit, the 7th day of July, 1904, the plaintiff and defendant entered into a written contract in words and figures as follows:

"State of Alabama, Jefferson County,

"This agreement made and entered into between H. L. Badham and A. H. McCormick this 7th day of July, 1904, witnesseth:

"That A. H. McCormick, of Birmingham, Ala., and the Dorchester Lumber Company, Badham, S. C., have entered into a certain contract as to his connection with and services to said Dorchester Lumber Company, to which contract this agreement is made a part.

"It is understood and agreed by and between H. L. Badham and A. H. McCormick that as a part of said contract H. L. Badham will sell to A. H. McCormick $4,500.00 of stock of said Dorchester Lumber Company, to be paid for in dividends or earnings of said Dorchester Lumber Company after its present indebtedness of approximately $75,000.00 has been discharged, and that purchase price of said stock shall bear interest at 6 per cent. only after said dividends begin to accrue.

"It is further understood and agreed that in the event H. L. Badham should desire to sell his interest in said Dorchester Lumber Company within two years from date he shall have option of purchase of said $4,500.00 of stock held by A. H. McCormick for the sum of $2,500.00.

"It is further understood and agreed that in the event A. H. McCormick should, of his own accord, sever his connection with the Dorchester Lumber Company, within two years from date he shall surrender said $4,500.00 of stock.                H. L. Badham.

"A. H. McCormick.

"Witness: A. L. Peace."

The plaintiff avers that by said contract defendant agreed to sell plaintiff 45 shares of the stock of said company at the par value and price of $100 each to be paid as therein specified, and that at the time of execution of the foregoing contract the defendant was the owner of 500 shares, of the par value of $100 each, of the capital stock of the said Dorchester Lumber Company, and the defendant's brother, one V. C. Badham, owner of the remaining stock of said company, consisting of 500 shares; and the said Dorchester Lumber Company had entered into a contract with the plaintiff for services to be rendered by plaintiff to said company for a term of, to wit, three years, which was the said contract with the said company referred to in said contract, and the defendant, in order to induce the plaintiff to enter the services of said company, entered into the said contract with the plaintiff above set out.

The plaintiff avers that the making of the said contract by the plaintiff with the Dorchester Lumber Company for service was the consideration for the making of the said contract above set out by the defendant with the plaintiff; and the plaintiff further avers that, to wit, in the month of February, 1907, the defendant, who then still held in his possession the certificates or certificate of said $4,500 of stock in the Dorchester Lumber Company consisting of 45 shares which he contracted to sell the plaintiff in the said written contract, informed the plaintiff that he was then on a trade with his said brother, V. C. Badham, to sell him the 500 shares of stock in said company then standing in his name, including the 45 shares sold to plaintiff, at and for the price of $100,000, which was at the price of $200 a share, and the defendant then asked and obtained the plaintiff's consent to include the said 45 shares which defendant had sold to the plaintiff in said sale, and in consideration thereof the defendant agreed with the plaintiff to account to the plaintiff or to settle with the plaintiff for the price at which the said stock was sold to the said V. C. Badham.

And the plaintiff avers that the defendant did thereafter during the year 1907 close the said trade for the sale of the said 500 shares of stock in the said company to the said V. C. Badham, at and for the price of $200 a share, and the defendant was paid a large part of the purchase money therefor, and the defendant failed and refused and still fails and refuses to account to the plaintiff for said stock, and has failed and refused and still fails and refuses to settle with the plaintiff for the said stock or the price for which it was sold to the said brother, V. C. Badham, or for the value of said stock.

Plaintiff avers that he fully performed said contract for services with the Dorchester Lumber Company, referred to in the contract for the sale of the said stock to him by the defendant, and remained with and in the services

of the said company for the full term of the said contract, to wit, three years, and performed all the duties devolving upon him thereunder.

The fourteenth count contains the same words as count 13 down to and including the words "entered into the said contract with the plaintiff set out above," where the said words first occur together therein, and adds the following:

The plaintiff avers that the making of the said contract by the plaintiff with the Dorchester Lumber Company for services was the consideration for making of the said contract above set out by the defendant with the plaintiff, and the plaintiff further avers that, to wit, in the month of February, 1907, the defendant, who then and still held in his possession the certificates or certificate for said $4,500 of stock in the Dorchester Lumber Company consisting of 45 shares which he contracted to sell the plaintiff in said written contract, informed the plaintiff that he was then on a trade with his brother, V. C. Badham, to sell him the 500 shares of stock in said company then standing in his name, including the 45 shares sold to plaintiff, at and for the price of $100,000, which was the price of $200 a share, and the defendant then asked and obtained the plaintiff's consent to include the said 45 shares which defendant had sold to plaintiff, in said sale, and in consideration thereof the defendant agreed with the plaintiff to account to the plaintiff or to settle with the plaintiff for the said stock, meaning the value thereof, not exceeding the price at which it was sold.

And the plaintiff avers that the defendant did thereafter during the year 1907 close the said trade for the sale of the said 45 shares of stock in the said company to the said V. C. Badham, at and for the price of $200 a share, and the defendant was paid a large part of the purchase money therefor, and the defendant failed and refused and still fails and refuses to settle with the plaintiff for the said stock or the price for which it was sold to the said brother, V. C. Badham, or for the value of said stock.

Plaintiff avers that he fully performed his said contract for services with the Dorchester Lumber Company referred to in the contract for the sale of the said stock to him by the defendant, and remained with and in the services of the said company for the full term of the said contract, to wit, three years, and performed all duties devolving upon him thereunder.

The following are the charges referred to in the opinion:

A. If the plaintiff is entitled to recover in this action, and you find from the evidence that the defendant could have realized the sum of $200 per share by enforcing the contract for the sale of the stock to V. C. Badham, and you further find from the evidence that the defendant, in April, 1908, and the said V. C. Badham rescinded the contract made by V. C. Badham for the purchase of the said 500 shares of stock from H. L. Badham, and that the plaintiff did not consent to the rescission, then the measure of damages which the plaintiff would be entitled to recover would be the sum of $200 per share, less the amount due the defendant from the plaintiff for the purchase of said $4,-500 of stock. Whatever sum the plaintiff may have been entitled to recover from the defendant in 1907 will draw interest at the legal rate of South Carolina up to the present time.

B. If you find from the evidence in this case that the plaintiff is entitled to recover, and you further find from the evidence that the defendant and the said V. C. Badham rescinded the contract for the purchase of the said 500 shares of stock by the said V. C. Badham from H. L. Badham, without the consent of the plaintiff, and you are not further satisfied from the evidence that the defendant could have realized the sum of $200 per share or any fixed sum by enforcing the contract against V. C. Badham, then the measure of damages which the plaintiff would be entitled to recover from the defendant would be a fair and reasonable market value (not to exceed the sum of $200 per share) of the said stock in the year 1907, less the amount due the defendant for the purchase price of said $4,500 of stock. Whatever sum the plaintiff may have been entitled to recover from the defendant in 1907 will draw interest at the legal rate of South Carolina from the time when it was payable up to the present time.

D. If the defendant included the 45 shares of stock in question in a sale of his holdings in the Dorchester Lumber Company, whether the said stock was actually delivered to the purchaser or not, then the defendant became liable to the plaintiff for the difference between the amount then due the defendant as purchase money for the 45 shares and the reasonable market value of the stock at that time, which amount should draw interest at the legal rate of South Carolina, 7 per cent. per annum, from the time when the defendant became liable to the plaintiff therefor up to the present time.

E. According to the terms of the written contract of date July 7, 1904, between the plaintiff and the defendant, the plaintiff acquired a certain interest in or right to the stock therein mentioned; and by virtue thereof the plaintiff had a right during his term of service with the Dorchester Lumber Company to pay the purchase price for the said stock, whether the dividends or earnings of the company had been sufficient to pay any part of the purchase money or not.

F. If the defendant in or about the month of February, 1907, informed the plaintiff that he was on a trade with his brother, V. C. Badham, to sell him 500 shares of stock in the Dorchester Lumber Company, which included the 45 shares sold to the plaintiff by the defendant, under the contract bearing date of July 7, 1904, and that the price for which he was about to sell the said stock to the said V. C. Badham was $200 per share, and that the defendant asked and obtained the plaintiff's consent to include the 45 shares, which the defendant had contracted to sell the plaintiff, in said sale, and agreed to settle with the plaintiff for the price of said stock, and that the defendant thereafter did, during the year 1907, close said trade for the sale of the said 500 shares of stock, to the said V. C. Badham at and for the price of $200 per share, and that

the defendant was paid a large part of the purchase money therefor, then the defendant became liable to the plaintiff for the value of said 45 shares of stock, less the amount of $4,500 due the defendant for the purchase money thereof.

Charges A and B were given, and charges D, E, and F were refused.

The following are the charges referred to by numbers:

(11) Under the agreement of July 7, 1904, between plaintiff and defendant, which has been introduced in evidence; plaintiff would have been entitled to the $4,500 of stock in the Dorchester Lumber Company when paid for out of the dividends or earnings; under the undisputed evidence nothing was paid therefor by way of dividends or earnings, and plaintiff did not become entitled thereto.

(16) There would be no duty on part of the defendant to enforce the original contract with V. C. Badham, if you believe from the evidence there was such a contract, unless you further find that defendant had agreed to sell the $4,500 of stock to V. C. Badham and had agreed with plaintiff to settle with plaintiff for its value or on some other basis.

These charges were given for defendant.

The affidavits referred to in the opinion are as follows:

James A. Mitchell, first being duly sworn, deposes and says: That he is the attorney for the plaintiff, in the case of A. H. McCormick v. Henry L. Badham, and that he acted as such attorney in the trial of said cause before Judge Boyd in the circuit court of Jefferson county, Ala., beginning June 17, 1918, and ending June 19, 1918. That neither one of the following three papers which are attached hereto was introduced in evidence on trial of said cause, namely: A letter from A. H. McCormick to Henry L. Badham, dated March 9, 1906; a statement of Dorchester Lumber Company, dated May 31, 1904; and a balance sheet of the Dorchester Lumber Company, dated February 28, 1907. That said three papers which are hereto attached were included in the batch of papers handed affiant by W. L. Tate, bailiff and deputy clerk in Judge Boyd's division of said court on June 19, 1918, a few minutes after the verdict was returned in said cause; and the said three papers are the ones referred to by Wm. H. Hayden in his affidavits hereto attached as having been taken to the jury room by the jury in said cause upon their retirement, and also referred to by each of the other affiants whose affidavits are hereto attached, namely, W. L. Tate, L. A. Keene, A. W. Brazelton, and W. K. Shanz. That this affiant, James A. Mitchell, did not consent to the taking out of said papers by the jury, and he did not know that said papers were taken to the jury room when the jury retired to find their verdict in said cause, and he first learned that the said three papers had been taken out by the jury when the said W. L. Tate gave him the batch of papers, after the jury reported the verdict in the said cause.

August Benners, being duly sworn, deposes and says: That he was one of the attorneys of the defendant on the trial of the above-styled cause which began on July 17, 1918, before Judge Boyd. That the letter from plaintiff to defendant dated at Badham, S. C., March 9, 1906, and a statement of the Dorchester Lumber Company, dated May 31, 1904, and a balance sheet of the Dorchester Lumber Company, dated February 28, 1907, were both exhibited to the witness Reed and the witness McCormick, and were used by them in giving testimony. That each of said witnesses was interrogated at length about said statement and balance sheet, and the witness McCormick was examined at length about said letter dated March 9, 1906. That all of said documents were used by both counsel in the examination of witness during the trial, and that at the conclusion of the trial, just before the jury retired, affiant suggested to plaintiff's attorney, in the presence of the court, that such papers as were not to go to the jury be taken from the file. Thereupon plaintiff's attorney took one letter, which attorneys were not certain had been introduced, from the file, and plaintiff's attorney made no comment or objection about any of the other papers being handed to the bailiff, including the documents referred to above.

James A. Mitchell, first being duly sworn, deposes and says, in reply to the affidavit of Augustus Benners: That counsel for the plaintiff did not, except in a minor particular, examine any witness in regard to any one of the three papers in question that were taken out by the jury but not introduced in evidence. That plaintiff's attorney did not know that any one of said three papers were before the court at the time inquiry was made as to what papers should not be taken out by the jury. That counsel for the plaintiff the affiant, knew that the defendant had not introduced any documentary evidence on said trial, and had verified his recollection by asking the court stenographer for his recollection that morning before the arguments began, and the only papers that affiant saw laid before the court to be sent out to the jury were those introduced by plaintiff. That some question had arisen prior to that time as to whether one certain letter had been introduced by plaintiff, and the parties were unable to get the first stenographer who acted in said cause, and both the counsel for the defendant and the court said their recollection was that it had been excluded. Thereupon said letter was taken from those to be taken out by the jury. Another paper had been introduced in evidence by plaintiff and was attached to several papers which were not introduced, and the court decided to detach from those not introduced, which was done by the court. Plaintiff's attorney at no time after the argument in said trial saw either one of the three papers mentioned in the sixteenth ground for new trial, and did not know that they were laid on the judge's bench or handed to the bailiff, and did not know they were handed to the jury. Defendant's attorney did not exhibit to affiant any one of the three papers and did not consult him about the same.

A. W. Brazelton, one of the court reporters, made an affidavit that while he was reporting none of the papers were introduced in evidence, to wit: Letter from McCormick to Bad-

ham, March 9, 1904; statement Dorchester Lumber Company, dated May 31, 1904; balance sheet Dorchester Lumber Company, dated February 28, 1907.

W. K. Schanz, another court reporter, made a similar affidavit as to the same papers.

Also L. A. Keene, another court reporter, made a similar affidavit as to the same papers.

One by W. L. Tate, tending to support Mitchell as to the letter dated March 9, 1904, from McCormick to Badham.

W. H. Hayden made an affidavit that the papers referred to in Mitchell's affidavit were taken to the jury room by the jury, and that some of them were examined by some members of the jury.

William Odum, another member of the jury, made affidavit that before reaching and signing a verdict in the case none of these papers were read to or discussed by the jury, and that if they were examined he failed to learn of it.

James A. Mitchell, of Birmingham, for appellant.

It was error to sustain demurrer to the twelfth count of the complaint. 191 Ala. 339, 67 South. 609; 201 Ala. 210, 77 South. 736; 201 Ala. 141, 77 South. 565. The writing imports a consideration. Section 3966, Code 1907; 137 Ala. 350, 34 South. 1012; 201 Ala. 141, 77 South. 565. On the questions of evidence, counsel cites 74 Ala. 393; 151 Ala. 249, 44 South. 203; 3 Ency. Ev. 372; 14 Ency. Ev. 696 and 714; 176 Ala. 343, 58 South. 381; 39 Ala. 461; 13 Corpus Juris, 644; 94 Minn. 469, 103 N. W. 338; 186 Mass. 489, 72 N. E. 53; 112 N. W. 481; 1 Ga. App. 667, 57 S. E. 1030; 69 Fed. 798, 16 C. C. A. 425; 132 Mo. 513, 34 S. W. 252; 76 Ala. 163; 101 Ala. 34, 13 South. 130; 86 Ala. 151, 5 South. 157; 80 Ala. 51; 11 Ala. 1009. As to the charges, counsel cites 13 C. J. 240–245; 77 Ala. 248; 72 Ala. 493; 191 Ala. 339, 67 South. 609; 173 Ala. 568, 56 South. 216; 70 Ala. 389; 88 Ala. 328, 6 South. 701; 155 Ala. 281, 46 South. 477; 106 Ala. 189, 17 South. 324.

Percy, Benners & Burr and W. K. Terry, all of Birmingham, for appellee.

The contract or agreement alleged by plaintiff was so vague and uncertain that a court could not enforce it. 109 Ala. 179, 19 South. 428; 81 Ga. 775, 8 S. E. 533; 159 Mo. 410, 60 S. W. 91, 51 L. R. A. 156, 81 Am. St. Rep. 368; 115 Cal. 644, 47 Pac. 689, 928; 26 Ala. 272; 59 Ala. 264; 117 Ala. 480, 23 South. 67; 148 Ala. 324, 42 South. 614. The twelfth count was fully covered by counts 13 and 14. Count 7 was fully and fairly submitted to the jury, and no other common count would support a recovery. 90 Ala. 347, 7 South. 736; 10 Ala. 330. Counsel discuss assignments of error relative to evidence, but without citation of authority.

THOMAS, J. This is the third appeal in this case. The several trials were had before different judges.

On the first appeal the ruling of the trial court was sustained on demurrer to certain counts of the complaint; the written contract, on which the suit was sought to be maintained, was construed, and reversal was had for the giving of the general affirmative charge for defendant. McCormick v. Badham, 191 Ala. 339, 347, 67 South. 609.

The verdict for plaintiff, on the second trial, was set aside on motion for a new trial; and that judgment was affirmed. The Chief Justice declared that, although the seller agreed to sell the stock of the plaintiff buyer to a third person and to account for the stipulated price obtained, and later made a contract with such third person rescinding the contract, in the absence of a showing as to what the seller would have realized by forcing the third person to perform, or that the amount stipulated was realized by the sale made, plaintiff could only recover the market value of the stock. McCormick v. Badham, 201 Ala. 210, 77 South. 736.

The present appeal is from a judgment for defendant. In plaintiff's motion for a new trial it is averred, among other grounds, that the jury improperly carried with them to the jury room three papers which had not been introduced in evidence, which said papers had a bearing on the issues in the case and were considered by the jury in arriving at a verdict. The motion was overruled and due exception reserved.

[1, 2] On the first appeal the sufficiency of the twelfth count was not passed upon, since demurrer thereto had been overruled. McCormick v. Badham, 191 Ala. 339, 346 (5), 67 South. 609. In counts 13 and 14 plaintiff had the benefit of the issue of fact sought to be presented by the twelfth count. That "the defendant agreed with the plaintiff to account to the plaintiff or to settle with the plaintiff for the price of the said stock," without other essential averment, did not clearly disclose to what the words "price of the said stock" referred; that is, whether reference was made to the market value of the stock or the amount for which it was purchased by plaintiff, or contracted to be sold to a third party. The word "price," as it occurs in the twelfth count, is made to refer, or may be referred, to two different sums, viz., defendant agreed to sell plaintiff 45 shares of the stock of said company at the par value and at the price of $100 each; and defendant agreed to sell the stock to V. C. Badham at the price of $200 a share. Testing the count by its weakest averment, in the light of this varying use of the word "price," it was subject to challenge by demurrer. This indefiniteness was remedied in count 13 by the averment that "defendant agreed with the plaintiff to account to the plaintiff or to settle with the plaintiff for the price at which the said stock was sold to the said V. C. Badham"; and in count 14

by the averment that "the defendant agreed with the plaintiff to account to the plaintiff or to settle with the plaintiff for the said stock, meaning the value thereof, not exceeding the price at which it was sold." It is evident that the issue of fact sought to be presented under count 12 was afforded plaintiff in counts 13 and 14, and that no evidence could have been introduced under count 12 which was not introduced under the two latter counts.

[3, 4] There was a consideration imported by the written contract. B. R. L. & P. Co. v. Littleton, 201 Ala. 141, 77 South. 565, 572–574; Prudential Casualty Co. v. Kerr, 80 South. 97, 99;[1] Georgia Home Ins. Co. v. Boykin, 137 Ala. 350, 367, 34 South. 1012. It was not necessary that plaintiff prove the true consideration for that contract. The surrender of rights, indicated on former appeal, was said to constitute the consideration for the alleged new parol agreement between the plaintiff and defendant. McCormick v. Badham, 191 Ala. 339, 346 (6), 67 South. 609. This suit is founded on said new agreement between said parties. It follows that the question, "What was the consideration of this contract?" (the written contract of July 7, 1904) did not call for evidence material to a controverted issue of fact as presented in counts 13 and 14.

[5] No error was committed in not permitting plaintiff to introduce in evidence the letter (of January 26, 1907) from defendant to plaintiff. It contained no statement bearing on the issues made by the pleading. The gravamen of the complaint was that defendant, by agreement with plaintiff, sold or agreed to sell stock of the Dorchester Lumber Company to defendant's brother, V. C. Badham, and to include in the sale the stock in which plaintiff had an interest, and that defendant would account to plaintiff for the price at which the said stock was sold to the said V. C. Badham. If plaintiff had any right of action, it was based on this completed transaction with V. C. Badham, and not on the rights plaintiff would have had if defendant had otherwise contracted for the sale of the stock. That is to say, it was immaterial what negotiations defendant had with other persons for the sale of the stock. For like reason, there was no error in refusing to allow plaintiff to testify of his conversation with H. L. Badham at the mill relative to its sale through one Tucker in Charleston. Nor was that matter made relevant by the statement of plaintiff's counsel that defendant (at some other time) went to Charleston for the purpose of negotiating a sale of the stock through Tucker to Lindsay at $200 a share. The irrelevancy of the foregoing proposed testimony is further shown by the fact that, at the time of the alleged conversation sought to be given in evidence,

no dividends had been declared on shares of stock in said lumber company, and no payment had been made by plaintiff to defendant for the stock in question. The indebtedness of the lumber company had not only not been canceled, but had largely increased from the time when McCormick began his employment with that company.

[6, 7] The measure of the value of plaintiff's "contingent, inchoate, contractual right to impose upon Badham the obligation to sell the stock to him" (McCormick v. Badham, 191 Ala. 346 [6], 67 South. 609) was not affected by the fact, if it be a fact, that the stock could have been disposed of to other parties than V. C. Badham for the same or a different price, at other times. Of this, defendant's counsel aptly observes:

"It is one thing to say that the surrender of such rights (secured by the written contract) would afford consideration for a new undertaking (McCormick v. Badham, 201 Ala. 210, 77 South. 738), * * * and say, on the other hand, that they had an actual monetary value capable of measurement" at the time in question.

This, by way of plaintiff's effort to introduce evidence tending to show the reasonable market value of the stock at other times than that when H. L. Badham had completed the sale of said stock to V. C. Badham. However, the record shows that plaintiff was permitted to testify that its fair market value was easily $200 a share. If the court had been in error in excluding the evidence in question, plaintiff could not ask more than that he testify generally as to what was the fair market value of the stock. This he was permitted to do.

The letter of H. L. Badham, dated Birmingham, Ala., 3/5/07, to plaintiff was not material. It contained no offer to purchase or confirmation thereof, no disclosure or admission of liability on plaintiff's part unconditionally to pay plaintiff for the 45 shares of stock in the Dorchester Lumber Company. The letters of December 24 and 28, 1907, were properly excluded. They do not tend to show liability of defendant on the parol agreement declared upon. It may be the letters would be competent in a suit between McCormick and Dorchester Lumber Company for 5 per cent. of the earnings of that company as a part of plaintiff's compensation for services rendered. The other objections and exceptions made and reserved on introduction of evidence have been considered and are without merit.

[8] Several written charges were requested by plaintiff, which we have denominated A to F, inclusive. Given charge A correctly states the measure of damages under the new parol agreement, to which plaintiff would be entitled, in event of recovery—the sum of $200 per share less the amount due the defendant for the purchase price of the stock,

---

[1] 202 Ala. 259.

with interest at the legal rate of South Carolina to the time of the trial. Given charge B correctly states the measure of damages where there was a rescission of the sale by H. L. Badham to V. C. Badham as follows: "a fair and reasonable market value (not to exceed the sum of $200 per share) of the said stock in the year 1907, less the amount due the defendant for the purchase price of said $4,500 of stock," with interest at the legal rate of South Carolina from the time when it was payable up to the present time. Refused charge D, to a contrary effect, was properly refused.

[9] Charge E, not in conformity to the issue made by the pleading, was properly refused as confusing, if not positively misleading.

[10] Charge F, if not otherwise faulty, was refused without error for instructing a finding for plaintiff for the full value of his stock, at $200 a share, less the amount of $4,500 due therefor, regardless of what defendant may have realized or collected on its sale to V. C. Badham. That is to say, the alleged new parol agreement did not provide that the defendant was to pay plaintiff $200 per share for the stock, but was merely to include plaintiff's stock in the sale to V. C. Badham and to account to McCormick for what defendant received from its sale, while the charge sought to instruct a finding of $200 per share for plaintiff's stock, if the sale was made to V. C. Badham, regardless of what defendant may have collected on the whole purchase price.

[11] Under the evidence the court properly gave the general affirmative charge for defendant as to the common counts. And charge 11 was properly given at defendant's request. The undisputed evidence shows that nothing by way of dividends or earnings was or had been paid to H. L. Badham, nor was the stock otherwise paid for by plaintiff; and under the written agreement of July 7, 1904, plaintiff would only have become entitled to the $4,500 of stock in said lumber company when the same was paid from such dividends or earnings.

[12] Given charge 16 properly stated that it was defendant's duty, so far as plaintiff is concerned, to enforce the original contract with V. C. Badham only in the event defendant had agreed to sell the $4,500 worth of stock to V. C. Badham, and further agreed to settle with plaintiff for its value on an agreed basis.

[13] The sixteenth ground of the motion for a new trial is that—

"The jury improperly took with them to the jury room, when they retired to make up their verdict, and had before them in the jury room with other documentary evidence, three papers which had not been introduced in evidence, namely: (a) A letter from plaintiff to defendant dated at Badham, S. C., March 9, 1906.

(b) A statement of the Dorchester Lumber Company, dated May 31, 1904. (c) A balance sheet of the Dorchester Lumber Company, dated Feb. 28, 1907."

Counsel for plaintiff says of the letter, statement, and balance sheet in question that—

"The evidence as to the value of the company's timber lands and other assets did not merely go to the measure of damages, but it was material in determining whether or not the plaintiff was entitled to recover at all; for if the 45 shares of stock in question were worth no more than par, then the plaintiff could not recover, for there was due the defendant for purchase money for the stock, $4,500."

Mr. Hayden, in his affidavit, declared that, as a juror who tried this cause he examined the statement of May 31, 1904, and balance sheet, dated February 28, 1907, while the case was under consideration, and that he saw another member of the jury examine the letter of March 9, 1906.

A juror may not testify as to what transpired in the deliberations of the jury. This is forbidden by public policy, which demands that deliberations of the jury room be kept secret. Clay v. City Council of Montgomery, 102 Ala. 297, 302, 14 South. 646; B. R. L. & P. Co. v. Moore, 148 Ala. 115, 130, 42 South. 1024; Continental Casualty Co. v. Ogburn, 186 Ala. 398, 403, 64 South. 619; Ala. F. & I. Co. v. Rice, 187 Ala. 458, 463, 65 South. 402; Brister v. State, 26 Ala. 107, 133; Proffatt on Jury Trial, § 408; Thompson & Merriam on Juries, § 363; 12 Am. & Eng. Encyc. of Law (1st Ed.) 318. The affidavit of a juror may, however, be allowed to show extraneous facts which may have influenced their verdict. Clay v. City Council of Montgomery, supra; Ala. F. & I. Co. v. Rice, supra.

[14-16] The plaintiff proved the extraneous fact that the juror Hayden examined the balance sheet dated February 28, 1907, and the statement of May 31, 1904, in the jury room, while the case was under consideration by the jury, and that another juror examined the letter of March 9, 1906. As to the examination of the letter, statement of assets, and balance sheet in question by other jurors, the affidavit of the foreman of the jury was to the contrary and supported the verdict.

The bill of exceptions shows that the letter of March 9, 1906, was referred to by Mr. McCormick, as a witness, in these words:

"I wrote that letter dated March 9, 1906, (referring to the letter shown the witness). That is in my handwriting. If it is so stated in that letter, I guess I said, 'replying to yours, I went over the timber acreage with Jacques, and cut out all we considered worthless and left 17.494 acres Dec. 31st; we valued this at $7.50 per acre.' I did not have anything to do with putting the figures on except as given to

me I put them on the books. I was not mistaken then when I valued this land. Jacques was the man in charge of the timber. I did not make the valuation. I did not intend to convey the idea. When I said 'we,' I referred to the Dorchester Lumber Company. That timber was bought at different prices. In some instances we valued it on the books at $7.50 that was bought at $5."

The witness Reed in his testimony referred to the letter as follows:

"I get that 17,000 acres of timber from an inventory on a letter Mr. Badham showed me; one of Mr. McCormick's letters, saying he had 17,000 acres of timber in 1907. And the books show they had 21,000 in 1904; and they bought a little, bought 3,717 acres of timber, making a total of 24,717 acres of timber all told, and they had according to a letter as an inventory in 1907, 17,000 acres. This letter says 17,494 left on December 31st. So that a quantity of timber less by 4,000 acres was valued in 1907 at $150,000, and had a value in 1904 of $28,000 in round figures."

Thus was a pertinent part of the letter before the jury by plaintiff's reference, as well as by reference made thereto by defendant's witness Reed.

The statement of February 28, 1907, was referred to by McCormick in his evidence as follows:

"I suppose I sent H. L. Badham that statement (referring to a statement shown the witness). It is not in my handwriting. That at the bottom is in my handwriting. That was the balance sheet, February 28, 1907. I could not say it was sent then; it was sent some time after. As to the valuation of the property shown by that statement, you have to add the earnings of the business; those figures change every month. They varied some between February and September. I don't know that they did vary $100,000. I would be afraid to say they did without referring to the papers. They show total assets of a value in September of $475,000. And this (the one of February 28, 1907) shows $406,000. * * * When I went there I made up a statement, and that statement showed assets approximately amounting to $207,000. I kept the books in the meantime. And I claimed to have a contract to pay me 5 per cent. of its earnings. And while my statement when I went there showed assets of $207,000, when I left it showed assets of over $400,000, and I wrote the company was about to go into bankruptcy. * * * (A written statement was here shown the witness.) That is in my handwriting. That shows the valuation of the timber at the time I went there of $28,894.86. (Another statement was then shown the witness.) That is the statement I checked in February, 1907, and that shows a valuation of timber of $159,360.80."

The plaintiff, as a witness, on cross-examination by defendant further referred to the statement as follows:

"I don't quite understand without going to the books about what that item of $15,000 in statement of February 28, 1907, refers to. I can't explain this memorandum on that statement. This points to the accounts receivable, including charges. I won't make a statement about it without going to the books. I do not know that $15,000 is the $15,000 paid Henry Badham. I don't recall any other item H. L. Badham was concerned in. I don't know perfectly well there was not any other. I can explain those items if you let me go to the books, but I cannot explain it from that sheet. That was for Mr. Badham's information that was put on there, for his information only."

In his testimony, McCormick makes reference to the statement of the Dorchester Lumber Company, dated May 31, 1904, as follows:

"I made a trial balance showing the assets and liabilities each month. I have one for 1904 when I went there, and one for September 30, 1907, when I left. These papers (exhibiting certain papers) include the trial balance, and an itemized statement of the assets and the liabilities of the company. * * * I furnished copies of these statements to H. L. and V. C. Badham from time to time, and I don't know but believe I furnished a copy at this time."

On page 50 of the record witness says:

"That is the statement I checked in February, 1907, and that shows a valuation of timber of $159,360.80."

The statement of May 31, 1904, was produced by McCormick, and he testified of it as follows:

"I made a trial balance showing the assets and liabilities each month. I have one for 1904 when I went there, and one for September 30, 1907, when I left. These papers (exhibiting certain papers) include the trial balance and an itemized statement of the assets and liabilities of the company. * * * I kept the books. I know these are correct. I furnished copies of these statements to H. L. and V. C. Badham from time to time."

The record recites:

"Plaintiff then introduced in evidence the balance sheet or trial balance showing the assets and liabilities of the Dorchester Lumber Company, September 30, 1907."

And on page 55 of the record plaintiff was interrogated somewhat as to the statement of September 30, 1907, and the balance sheet in question of February 28, 1907—which it is insisted, should not have been taken by the jury to the jury room for consideration.

It was not reversible error for these documents to go to the jury room under the circumstances and under the references made thereto in examination of witnesses by the respective counsel.

In Mooney v. Hough, 84 Ala. 80, 87, 4 South. 19, 21, the court said:

"There was no error in allowing the jury to have with them in their retirement, the copy-accounts, used by witnesses in giving their testimony. Hirschfield v. Levy, 69 Ala. 351. The

same object could have been accomplished by having the jury make memoranda of the accounts, or of the items composing them, as deposed to by the witnesses. In the absence of one or the other of these methods, it would be very difficult for the jury to reach anything approximating correct conclusions."

So in Heard v. Burton-Boyd Merc. Co., 202 Ala. 218, 219, 80 South. 40, 41, Mr. Justice Sayre said:

"Appellee's itemized statement of its accounts against appellant's tenants, for which appellant was responsible to appellee, was allowed to go to the jury without reversible error. There was evidence tending to establish the correctness of this account, and while it seems not to have been formally offered in evidence, as properly it might have been, there was no error in submitting it to the jury as a mere memorandum of the facts to which the witnesses had testified."

If the documents in question had been formally offered as evidence on the trial of the cause, they would have been admitted. No objection of counsel on either side appears to the references made to these several documents, in direct and cross examinations of witnesses. The jury could not likely have carried in mind the figures detailed by the witnesses from such documents. On this ground we may justify the action of the trial court in not granting a new trial. For this reason it is not necessary to rest our ruling alone on affidavits of counsel. The Reporter will set out said affidavits in the statement of facts. Many letters and statements had been employed by counsel during the progress of the cause. It is undisputed that the statement was made by defendant's counsel that the documents be assorted so as to take to the jury room only those that were in evidence.

Mr. Thompson, in his work on Trials (volume 2, § 2591), on the authority of Maynard v. Fellows, 43 N. H. 255, 259, said that it is the duty of counsel "to ascertain what papers are sent to the jury before they leave the court; and no motion for a new trial should be allowed merely because this duty has been neglected. It should appear that the counsel used due care, that none but proper papers were passed to the jury; and that the paper in question was nevertheless sent to the jury by some mistake, or through some trick or artifice of the opposite counsel. At the same time it has been reasoned that it is not the duty of one counsel in a case to watch the opposite counsel to see that he does not send any improper papers to the jury." Flanders v. Davis, 19 N. H. 139. No desire or effort is shown on the part of either of respective counsel to put before the jury any testimony not formally admitted in evidence; only an inadvertence in allowing to go to the jury the three papers so used on the trial and to which reference was made is shown to have

occurred. It is true that both counsel should have inspected the documents to be handed the jury.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

On Rehearing.

PER CURIAM. [17] The common counts for money due by account on, to wit, July 7, 1907, and special counts 13 and 14, present the controverted issues on last appeal. The right to declare on common counts and under the terms of a contract is stated in Martin v. Massie, 127 Ala. 504, 508, 509, 29 South. 31, as follows:

"The general rule is that where there is an express contract, the plaintiff cannot resort to an implied one, but must recover, if at all, on the express agreement. 'An exception to the rule, however, is that he may recover on the common counts, although the evidence discloses a special agreement, when such agreement has been executed and fully performed, and no duty remains but the payment of the price in money by the defendant. But so long as the contract continues executory, the plaintiff must declare specially,' and prove performance."

This rule has been recognized in Moundville Lumber Co. v. Warren, 83 South. 479;[2] Hartsell v. Turner, 196 Ala. 299, 300, 71 South. 658; Russell v. Bush, 196 Ala. 309, 315, 71 South. 397; Lowy v. Rosengrant, 196 Ala. 337, 71 South. 439; Joseph & Bros. Co. v. Hoffman & McNeill, 173 Ala. 568, 56 South. 216; Maxwell v. Moore, 163 Ala. 490, 50 South. 882; Carbon Hill Coal Co. v. Cunningham, 153 Ala. 573, 44 South. 1016; Worthington v. McGarry, 149 Ala. 251, 253, 42 South. 988; Anderson v. Rice, 20 Ala. 239; Snedicor, Adm'r, v. Leachman, Adm'r, 10 Ala. 330; Reeves v. Wallace, 1 Port. 116; Graydon v. Buford, 1 Ala. App. 668, 56 South. 77.

[18] The testimony of Mr. McCormick was to the effect that his contract with the Dorchester Lumber Company stipulated that he should be paid $200 a month and 5 per cent. of the earnings of said corporation; that defendant contracted further to permit him to purchase $4,500 of the stock of H. L. Badham's holdings in said corporation. The legal effect of this contract was given full discussion on the first appeal. On this appeal Mr. McCormick testified that about February, 1907, he and H. L. Badham took up the question of selling 500 shares of stock standing in said Badham's name "including my stock" (McCormick's interest in the $4,500 of stock in question). The conversations between Badham and McCormick as to proposed sale of the stock to a Mr. Lindsay, and the fact

---

[2] 203 Ala. 488.

that "defendant informed the plaintiff that the terms and everything were agreed upon before he decided to let his brother have it, at $200 a share," was only competent evidence as it may tend to show recognition on the part of said Badham of McCormick's limited interest—some of the shares of stock about to be sold to V. C. Badham.

Plaintiff further testified that in February, 1907, defendant requested plaintiff to meet him on the train going to Branchville; that he did so and was informed by Badham that "he had decided to sell his interest in the business to his brother" for $100,000 for the half interest; that was $200 a share; that said Badham wanted to know whether witness desired to "continue with the business, * * * or come back to Birmingham," and whether witness would agree to let V. C. Badham have the stock in which witness was interested or "wanted to remain with the business and keep the stock," to which McCormick testified, he replied that, if H. L. Badham was going to sell his interest, witness would prefer not to stay with said lumber company. Their agreement, alleged to have been made on that occasion, is thus stated by McCormick:

"I would agree to let the stock I was interested in go with what he was selling to his brother. He and I made an agreement about it on that occasion, and he told me that he would settle with me; make it entirely satisfactory with me if I would consent to let all the stock go to his brother; and I agreed to that. He told me that he would settle with me."

Plaintiff offered in evidence a letter of date February 22, 1907, from H. L. Badham to McCormick, containing this statement:

"I also note what you say in reference to the sale of my interest. I judge from telegram received last night from V. C. that he will arrange the payment of the $15,000 in time to protect his interest. If he does not do so, as you know I am under contract to sell to Lindsay, however, I feel sure from what you and he both say that there will be nothing in the way of your closing this trade; then it will be a question of ninety days and I will be in position to give you an opportunity to sell the entire plant provided V. C. is not able to carry out his contract. In other words, I am not definitely tied up except for the ten days."

This evidence is competent only as it may tend to shed light upon the question of whether or not there was a subsequent contract between the parties as to the sale of the stock to V. C. Badham and what that contract relation was.

For a like reason may have been admitted in evidence the letter of March 5 of the same year, in the following words:

"Dear Mack: Your letter and check received. I am very very sorry V. C. made the trade for I don't see how he can pull through. Do the best you can for him and save him if it's possible. I feel blue and discouraged. The other trade would have saved both of us.
"Your friend, H. L. B."

The real question presented, under plaintiff's own statement of what was said between him and H. L. Badham, was: Did the latter purchase or agree to purchase said stock of McCormick? In his testimony H. L. Badham denied he made offer or agreed to purchase any interest in said stock from McCormick; that—

"On or about February 15, 1907, I telephoned him [McCormick] to meet me on the train, and I told him I made this tentative agreement for the option, and Mr. McCormick said, 'He will never carry it out, but it is nice for you to give him the show; let me get away from here as soon as you can.' And I told him I would look out for him [McCormick] in Birmingham, but to stay there until the demonstration was made whether or not he could carry out the trade. Not one word was said that he claimed an interest in the stock. I did not volunteer to pay him anything on account of his stock. Mr. McCormick did not say a word indicating he understood I was legally or morally bound to pay him anything on account of this stock. I did not use the expression that I would make a satisfactory settlement with him. He consented to continue on there at the sawmill pending this experiment as to whether or not my brother could make $6,000 a month out of the mill to pay me. He did continue. My brother did not pay me the $6,000 a month he agreed. He did not pay me anything except the $15,000. As long as Mr. McCormick remained, he wrote me frequently. Up to the time he left, he never did write me a line in any way indicating he thought I was due him a copper cent on any account whatever."

The evidence in question was admissible, as it may tend to corroborate the plaintiff's testimony under the issues made by the common counts and special counts 13 and 14; and the court erred in sustaining objections thereto.

The rehearing is granted; judgment of affirmance set aside, and reversed and remanded.

ANDERSON, C. J., and SOMERVILLE, THOMAS, and BROWN, JJ., concur.