# Clay v. City Council of Montgomery.

*Action against City for alleged Negligence, resulting in the Death of Plaintiff's Intestate.*

1. *New trial; offer to bribe a jury.*—Where the interference by strangers with a jury, by offer to bribe, has not been promoted by the prevailing party, has not been attended with corruption, and it does not reasonably appear that substantial prejudice has resulted to the party complaining, the verdict will not be set aside; and where the nature of the communication is explained by affidavits, which make it clear that it was of such a nature that no injury resulted therefrom, such interference constitutes no ground for the granting of a new trial.

2. *Same; interference by bailiff.*—To entitle a party cast in a suit to a new trial, on the ground that the bailiff, who had custody of the jury, said to the jurors, that the judge said he was going to keep them until they returned a verdict, the burden is upon the party complaining to establish such statement, and in the absence of evidence showing that such statement exerted some influence in the deliberations of the jury, a new trial will not be granted.

3. *Affidavits by jurors as to what transpired in the jury-room.*—Affidavits by jurors as to what transpired in their deliberations in the jury-room should not be received or considered; the law and public policy requires that such deliberations should be kept in secret.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN R. TYSON.

The appeal in this case is prosecuted by the plaintiff in the court below from a judgment of the circuit court overruling a motion by the plaintiff for a new trial.

[Clay v. City Council of Montgomery.]

The action was brought by J. O. Clay, as administrator of the estate of Kate Clay, deceased, against the city of Montgomery, to recover damages for the death of the plaintiff's intestate, which was alleged to have been caused by the negligence of the city. There was judgment for the defendant, and the plaintiff moved for a new trial on the following grounds : 1st. That the verdict was contrary to law. 2d. That the verdict was contrary to the evidence. 3d. That the verdict was contrary to the charge of the court. 4th. That the court erred in its charge to the jury in reference to the ascertainment of damages. The fifth ground is copied in the opinion.

CHAS. WILKINSON, for appellant.

EDWARD A. GRAHAM, *contra*.—Irregularity in the conduct of the jury in civil cases may be grounds for a new trial. But it must be shown by the party complaining that such irregularity was injurious to him, otherwise the motion for a new trial will not be granted upon such grounds.—*Grace v. McKissack*, 49 Ala. 163 ; 12 Amer. & Eng. Encyc. of Law, 371, and cases there cited.

STONE, C. J.—The transcript fails to show any exceptions reserved pending the trial. In fact, it fails to show any of the testimony that was adduced on the trial, nor does it set forth any of the rulings of the court that were made pending the introduction of the testimony, or in charging the jury. Hence there is no complaint of any action of the court, save the order overruling the motion to set aside the verdict, and to grant a new trial. The testimony bearing on the merits of the suit and the court's charge being omitted from the record, our labors are limited to the inquiry, did the circuit court err in refusing plaintiff's motion for a new trial? The jury had been permitted to disperse pending their deliberations.

Five separate grounds were stated in the motion why it should be granted ; but no attempt was made to prove or maintain either of the first four. The fifth ground is in the following words : "5. That said jurors in said cause were unduly influenced in rendering their verdict, in this; that after said case had been submitted to them for their consideration, and while the same was in their

hands for decision, some of the jurors were approached
by parties other than their fellow jurors, and statements
were made to said jurors, and conversations held with
members of said jury in reference to the points in said
cause.   That an attempt was made to bribe, or unduly
influence members of said jury to the injury of plaintiff
in said cause.''

Affidavits were submitted for and against the motion.
Two of the jurors made separate, sworn statements.
One made oath that two strangers approached him—did
not know their names.   One talked with him, and in-
quired if he, affiant, was not on the jury.   Answered he
was.   Stranger replied : ''Yes, I know that you are on
the wrong side, and you must get right.   You can make
some money if you will come over to the city.   The city
is being badly treated.   That it might not make any dif-
ference to me (affiant) and wanted to know why I did
not do like some of the other jurors—make some money
out of the case by giving a verdict for the city.   That it
would be easy for me (affiant) to make a stake, and that
I (affiant) ought to do so. That no one need know about
the matter, and that they had made it all right with
some of the jury.   That affiant could make some money
also.   *   *   *   *   That immediately upon the dis-
covery of the intention of said party, affiant stated to
said party that he could not be bought, and resented the
insult offered to affiant.   *   *   That affiant was ap-
proached by several parties while said jury had said
case under consideration, and they urged affiant not to
find any verdict against the city.   That the parties were
stangers to affiant, but persisted in talking with affiant
whenever he appeared upon the streets.''   Another juror
made oath that ''a party approached one of said jurors—
my recollection was [is] that said juror was named Crit-
tenden, and that said party was named Spivey. That affi-
ant is not certain as to the initials of said Spivey, but
that his name is Henry Spivey ; but said Spivey stated
to said juror that the city had done nothing wrong, and
that he could not see how the city had made itself liable
for any damages ;. that the city, he thought, could not
be held responsible ; that the city had done nothing
wrong, and words to the effect of like character.   That
the statement was made in presence and hearing of
affiant, and within the hearing of the other jurors,''

The remaining ten of the jurors—Booth, Calloway, Carmichael, Crittenden, Norman, Neal, Spear, Perdue, Owen and Phillips—each made oath "that they were jurors in said cause, that no one had approached them during the pendency of said cause and attempted to influence them in their verdict. That no one had bribed them, or attempted to bribe them, to render a verdict in favor of the City Council of Montgomery." This is substantially all the testimony introduced bearing on the question of tampering with the jury.

In Thornton on Juries, § 437, the law is thus stated: "If the facts produced cast upon the prevailing party suspicion that he has tampered with a juror, a motion for a new trial upon that ground should be sustained, without inquiring as to what effect the misconduct had upon the verdict." The same author, in section 430, had employed this language: "Where a juror, during the trial of a cause, conversed with a bystander, it was held not such gross misconduct as entitled the complaining party to a new trial, although such action subjected him to a fine. In this case it was expressly found that such conversation did not influence the action of the juror in making up his verdict." *Barlow v. State*, 2 Blackf. 114.

In Thompson and Merriam on Juries, § 349, the authors use the following language: "The courts generally agree that where the interference of strangers with the jury has not been promoted by the prevailing party, has not been attended with corruption, and it does not reasonably appear that substantial prejudice has resulted to the party complaining, the verdict will not be disturbed for this reason, whether the cause be civil or criminal, capital or otherwise. For stronger reasons, where the nature of the communication is explained by affidavits, which make it clear that it was of such a nature that no injury resulted from it, it will be no ground for a new trial. Even where bystanders, not witnesses, obtrude themselves into the jury room, during the deliberations of the jury, a new trial was refused, although one of the jurors changed his opinion, as to the amount of damages, after this intrusion took place, it not appearing that what was said by the intruders was listened to by the jurors as evidence; the court saying: "We are not aware of any instance in which the idle and imperti-

[Clay v. City Council of Montgomery.]

nent observations of persons not witnesses in the cause, and wholly unconnected with the parties, and who have had access to the jurors without any fault in them, were held to vitiate the verdict.   *   *   *   In civil cases the courts generally hold that, in order to set aside a verdict because improper communications have been had between members of the jury and third persons, the affidavits must do something more than raise suspicions that improper influences might have been brought to bear on the jury. A verdict which twelve men have rendered under the solemnity of their oaths, is certainly entitled to some consideration; and it would not only be unjust to the party who has obtained it to set it aside for some irregularity which has happened without his fault, unless prejudice clearly appear; but it would be entirely opposed to the policy of the law, which favors the ending of litigation and the quieting of controversies." See also Proffatt on Jury Trials, § 390; Brister v. State, 26 Ala. 107.

There is no attempt made in this case to prove that the person who conversed with the juror, as set forth and asserted in the affidavit first above set out, was an officer or agent of the city, or in any way interested in the suit. From aught that appears he was a mere stranger and volunteer. This being the case, to justify the court in acting upon it, there must at least be some evidence that the act complained of had probably exerted some influence in obtaining the verdict. So far from that being the case, the juror who made oath that the improper overture had been made to him, testified that he "resented the insult" offered to him. So, it is affirmatively shown that this overture accomplished nothing of which plaintiff can complain.

The other juror who made affidavit did not testify that any conversation had been held with him, or that Spivey, who, he alleged, had conversed with jurors, had any interest in, or connection with the defense of the suit. His statement was that Spivey had conversed with the juror Crittenden, "in the presence and hearing of affiant, and within the hearing of the other jurors." No offer to bribe is charged in this affidavit, as is shown in the copy of it set out above. Against this charge is the affidavit of the remaining ten jurors—Crittenden included—"that no one had approached them during the pendency of

said cause and attempted to influence them in their ver-
dict.    That no one had bribed them, or attempted to
bribe them, to render a verdict in favor of the City Coun-
cil of Montgomery.''    So this charge fails for the addi-
tional reason that it is not proved.

In the affidavit of the second of the jurors above stated
is the statement "that on the evening of the third day of
the trial'' the bailiff of the jury "stated to the jurors in
said cause that they had better make a verdict, for the
judge said he was going to keep them there until the
18th day of February, 1893.''    In reply to this the bailiff
testified "that during the deliberations of said jury,
while they had the said cause in their hands for decision
he made the following statement to one or more mem-
bers of the jury, upon being asked how long the judge
would keep them there, 'that they had plenty of time to
get a verdict—that the judge could keep them there
until the end of the term, (February 18.)    That this
was all he said ; that in fact the judge had made no
statement to him whatever.' ''    This was all the testi-
mony directly bearing on this question.    It will be noted
that in the juror's affidavit, it is said the statement
of the bailiff was made ''to the jurors."    Still, no other
affidavit is offered tending to establish its truth.    Nor
is there any attempt to show that such statement exerted
any influence in the deliberations of the jury, while the
affidavit of the ten jurors tends to repel such inference.
Conceding that the showing is equally balanced, this
ground for a new trial fails for want of proof to estab-
lish it ; and in this it differs from *K. C., M. & B. R. R.
Co. v. Phillips*, 98 Ala. 159.

The remainder of the affidavits of the two jurors re-
lates to what took place between the jurors in the delib-
erations of the jury room.    Mainly, as to what had been
the charge of the court on the measure of damages.
Manifestly this part of the affidavits should exert no in-
fluence.    Law and public policy alike declare that such
affidivits should not be received or considered.—Proffatt
on Juries, § 408 ; 12 Amer. & Eng. Encyc. of Law, 318 ;
Thompson & Merriam on Juries, § 363; *Brister v. State*,
26 Ala. 107–133.

Affirmed.