(119 So. 21)

**DULANEY et al. v. BURNS.** (7 Div. 772.)

Supreme Court of Alabama. Nov. 8, 1928.

Rehearing Denied Dec. 20, 1928.

495

Knox, Dixon, Sims & Bingham, of Talladega, for appellee.

Harrison & Stringer, of Talladega, and Rutherford Lapsley, of Anniston, for appellants.

FOSTER, J. The fifth and sixth grounds of contest do not allege sufficient facts to present an issue. The alleged fraud in the fifth ground is stated in general terms and without a statement of facts upon which same is based. Though undue influence has some elements of fraud, they are not synonymous. Shirley v. Ezell, 180 Ala. 352, 60 So. 905. The charge of undue influence may be in general terms. Coghill v. Kennedy, 119 Ala. 641, 24 So. 459; Wear v. Wear, 200 Ala. 345, 76 So. 111. But the charge of fraud must contain a statement of facts sufficient to justify the charge. Wear v. Wear, supra; Barksdale v. Davis, 114 Ala. 623, 22 So. 17; Moore v. Heineke, 119 Ala. 627, 24 So. 374. The fact that an alleged unnatural will is made as claimed in the sixth ground of contest is not of itself sufficient allegation upon which to base a charge of fraud. It is only one circumstance for consideration by the jury. The court correctly charged the jury orally in this respect. Chandler v. Jost, 96 Ala. 596, 605, 11 So. 636; Burney v. Torrey, 100 Ala. 157, 14 So. 685, 46 Am. St. Rep. 33; Pool's Heirs v. Pool's Ex'r, 33 Ala. 145.

Charge No. 1 given the jury at the instance of proponent is copied from the opin-

ion of this court defining undue influence in Bulger v. Ross, 98 Ala. 267, 12 So. 803. It is a statement of law supported by several cases cited in the opinion. The language of this charge copied from said opinion is quoted with approval in the case of Harris v. Bowles, 208 Ala. 545, 94 So. 757. There was no error in giving it to the jury.

■ Written charge No. 6, refused contestants, falls far short of what is required to constitute undue influence.

■ The rule attempted to be given the jury in requested charge No. 7, refused contestants, was correctly given the jury by the court in its oral charge, and in other given charges, and the court will not be put in error for refusing it.

On cross-examination of E. D. Acker, an attorney who wrote the will, and a witness for proponent, contestants' counsel asked him the following questions, and obtained the following answers: "Isn't it true that he (testator) was absolutely under the domination of Mr. Burns?" To which he answered, "You might call it that.". "I remember he came to Mr. Burns and stayed months and months and Mr. Burns had him looked after in his home." Question: "Whether or not during the last year of his life or last several years of his life he was absolutely under the domination of Mr. Burns?" He replied, "Under his influence." On redirect examination by proponent, witness was asked by counsel: "State what you mean by thinking that Mr. Burns had influence with Mr. Dulaney." Contestants objected. The court overruled the objection, and witness answered: "I mean that Mr. Burns, that Mr. Dulaney had the utmost confidence in Mr. Burns as a man that had been a good friend to him, and that is the kind of friend he was, and he carried him to his home when Mr. Phillips couldn't attend to him for a month or more at a time." Appellants insist that the court committed error here, and cite the case of Miller v. Whittington, 202 Ala. 406, 80 So. 499.

■ The question and answer of the witness merely gave an explanation of his testimony on cross-examination. It may be that on cross-examination contestants had the right to have the witness express his opinion as to the domination Burns is stated to have on Dulaney. And, if so, as stated in the Miller Case, supra, they thereby "opened the door for such illegal [if so] evidence. * * * The proponent was not improperly permitted to reply with like evidence. Gibson v. Gaines, 198 Ala. 583, 73 So. 929."

■ Upon the examination of proponent as a witness after contestants had offered evidence accusing him of seeking to influence testator, witness was asked by his counsel: "Did you ever at any time say anything to influence him (testator) about not leaving anything to his kinfolks?" Contestants duly objected, the court overruled the objection, and the witness answered, "Nothing in the

world." Contestants assign this ruling for error, and cite the Miller Case, supra. In that case it was held error to allow the following question and answer: "Did you see any inclination or effort on the part of any one to induce Tom Whittington to sign the paper?" Answer: "I did not." It will be noticed that the question related to an "inclination or effort." It did not call for what was said or done. "Inclination" means "a leaning or tendency of the mind, feelings, preferences, or will; propensity; bent; favor; desire; liking." Webster's Dict. Such evidence of "inclination" therefore is patently illegal.

"Effort" is synonymous with "endeavor," "attempt," "essay," "trial," "struggle," "strain." Webster's Dict. This called for an opinion. The two words "inclination" or "effort" were embraced in the same question. This was entirely different from a denial by witness of making any statement to influence testator. Whether the statement was "to influence" may partake of the nature of an opinion, but it was rather a shorthand rendering of facts or denials of any statements, to which previous reference had been made on the trial.

The principle is similar to the rule which obtains pertaining to evidence of insanity. A nonexpert, with sufficient acquaintance, may express a "negation of unnatural or peculiar conduct, without a specification of facts," and "that he had never seen any indication or evidence of insanity." Woodward Iron Co. v. Spencer, 194 Ala. 285, 69 So. 902; Caddell v. State, 129 Ala. 57, 30 So. 76; Dominick v. Randolph, 124 Ala. 557, 27 So. 481. The question in the record called for the negative of statements charged to witness. That such question related to statements "to influence him" only served to describe the character of statements inquired about. This court has applied the rule giving effect to "shorthand rendering of facts," as distinguished from an opinion, in many instances. Some of them may be enumerated. A nonexpert may testify as to one's physical appearance. Feore v. Trammel, 212 Ala. 325, 102 So. 529.

Testimony that the voice and manner of a house officer was insulting held statement of collective fact. Dixon v. Hotel, 214 Ala. 396, 108 So. 26. The question, "Was there anything around the set screw to keep you from coming in contact with it?" was held proper on the same theory. Standard Cooperage Co. v. Dearman, 204 Ala. 553, 86 So. 537. Testimony by one acquainted with the facts that one "had no other trouble or attack during such time" is within the rule. Birmingham & A. Ry. Co. v. Campbell, 203 Ala. 296, 82 So. 546. Testimony that a person was in charge of one's business, is within the rule. Kartus Dept. Stores v. Deason, 215 Ala. 97, 109 So. 751. Testimony that property "was most prominent corner in town" is within

the rule. Bynum v. State, 216 Ala. 102, 112 So. 348. Testimony that trees endangered power line is likewise admissible. Alabama Power Co. v. Bodine, 213 Ala. 627, 105 So. 869.

We conclude the court committed no error in this ruling.

■ Exception was taken to the following portion of the general charge:

"In other words, in this case, in order to constitute undue influence the mind of the person exercising the influence must be substituted for the mind of the person executing the will."

This excerpt in connection with the entire charge had, we think, no misleading tendency. The court correctly defined undue influence in his general charge and special given charges. Appellant makes point on the use of "mind" in that connection instead of "will." We think such refinement of distinction was of no practical prejudice to appellant.

After verdict for proponent, contestants made a motion for a new trial on the grounds: (1) That the jury, after the cause had been submitted, separated over night and attended a public meeting, and heard a public lecture at night on the street where there were a large number of Klansmen masked and robed; (2) that the jury while deliberating on their verdict obtained a dictionary and studied and read same in connection with their deliberations, and used same to ascertain the meaning of "undue influence"; (3) errors of the court in rulings here assigned for error; (4) that the verdict was contrary to the preponderance of the evidence, wrong, and unjust.

■ There is no rule of law now in effect requiring the court to keep a jury from dispersing after a civil cause is submitted to them. This is in the sound discretion of the court in such cases. A verdict will not be set aside merely because after being charged the jury in a civil case were permitted to leave the court and separate before giving their verdict. 38 Cyc. 1820; 16 R. C. L. 307 et seq. Section 8692 of the Code is not in conflict with this theory of the law. We have no statute directly on the subject. The rules relating to criminal cases in this respect do not apply to civil cases. No injury or prejudice or improper conduct is shown or attempted to be shown during the separation. A public lecture in no way connected with the case is not shown to have tended to injurious results, nor is there any attempt at such showing.

■■ Another ground of the motion was that the jury secured a Webster's Elementary School Dictionary and had it before them during their deliberations. It may be shown by the affidavit of a juror that such extraneous matter was before members of the jury while deliberating and before verdict rendered. But the question is whether such extraneous matter, in this instance a Webster's

School Dictionary, was prejudicial to appellant. It does not appear that the court or appellee or any one representing him had anything to do with this incident. But it was done on the initiative of the jury. Such incident, as a rule, is not ground for new trial if it does not appear that the matter was of a character to prejudice the unsuccessful party. Such effect has been applied where the jury consulted a dictionary to determine the meaning of a word in the judge's charge. 20 R. C. L. 260; Wright v. Clark, 50 Vt. 130, 28 Am. Rep. 496. The fact that the winning party had no connection with the transaction influences the result. Louisville & N. R. R. Co. v. Sides, 129 Ala. 399, 29 So. 798.

Reference was made by this court in the case of Leith v. State, 206 Ala. 439, 443, 90 So. 687, to the fact that proof may be made by affidavit of a juror of the reception of such extraneous matter, and that it has never been determined that proof may not be made by a juror that it was read, citing McCormick v. Badham, 204 Ala. 2, 85 So. 401; Louisville & N. R. R. Co. v. Sides, supra; Birmingham R. & E. Co. v. Mason, 144 Ala. 387, 39 So. 590, 6 Ann. Cas. 929. In the case of Caldwell v. State, 203 Ala. 412, 84 So. 272, it did not appear that the newspaper articles were before the jury at all. In the case of McCormick v. Badham, supra, this court held that a juror, to impeach the verdict, may not testify as to what transpired in their deliberations, further than the fact that extraneous matter was received and read by the jury. The affidavit in this case states that the jury read and considered the definition of "undue" and and "influence" and "confidential" each separately. This was not done by authority of the court or counsel.

■ The definition of words in our standard dictionaries is taken as a matter of common knowledge, which the jury is supposed to possess. There is nothing to indicate that the jury did not give full effect to the definition of "undue influence" as a legal term given by the judge in his charge.

As pointed out in the Leith Case, supra, it must appear that injury was done by the extraneous matter being before the jury. It is difficult to see wherein such injury occurred, occasioned by the jury reading a standard English dictionary. It is our view that, to impeach the verdict, it was permissible for a juror to testify to the fact of the presence before the jury of the dictionary, and how it came to be there. We conclude that the court properly overruled the motion on this ground. "After allowing all reasonable presumptions of the correctness of the judgment denying the motion for the new trial, we are not convinced that the preponderance of the evidence against the verdict is so decided as to clearly convince us that the verdict is wrong and unjust." Birmingham R. & E. Co. v. Mason, supra.

The record does not show error prejudicial to appellant, and it is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.