447 So.2d 655 (1984)
Lyndell A. WHITTEN, as personal representative of the estate of Harry H. Whitten, deceased
v.
ALLSTATE INSURANCE COMPANY.
82-1083.
Supreme Court of Alabama.
February 10, 1984.
Robert Wyeth Lee, Jr. of Wininger & Lee, Birmingham, for appellant.
*656 Jasper P. Juliano of McDaniel, Hall, Parsons, Conerly, Scott & Lusk, Birmingham, for appellee.
BEATTY, Justice.
Plaintiff, Mrs. Lyndell Whitten, appeals from the trial court's denial of her motion for a new trial. We reverse and remand.
The following issues are presented for review:
(1) Whether extraneous facts were introduced into the jury's deliberations;
(2) Whether the trial court could have found that the effect of such extraneous facts, if any, was not prejudicial; and
(3) Whether the trial court erred in denying Mrs. Whitten's motion for a new trial.
Mrs. Lyndell A. Whitten, as personal representative of her deceased husband's estate, instituted an action on June 18, 1979, against Allstate Insurance Company to recover under a policy of liability insurance. Mrs. Whitten made the following allegations in her complaint:
"1. On or about the 23rd day of May, Plaintiff's deceased husband was involved in an automobile accident at or near the intersection of Decatur Highway and Boydga Road, in the City of Birmingham, Alabama, with one David Lee Shelton. On said date and at said place, the said David Lee Shelton so negligently operated the motor vehicle which he was operating as to cause it to collide with the automobile which the Plaintiff's deceased husband was operating.
"2. As a proximate consequence and result of the negligence of the said David Lee Shelton at said time and place, the Plaintiff's deceased husband suffered serious bodily injuries from which he died.
"3. Plaintiff further avers that at the time of said accident, David Lee Shelton did not have a policy of liability insurance providing coverage for the automobile in the above described accident.
"4. Plaintiff further avers that at the time of said accident, Plaintiff's deceased husband was insured under a policy of liability insurance issued to him by the Defendant, Allstate Insurance Company, said policy being in full force and effect and containing uninsured motorist provisions promising to pay all sums which the insured or his legal representative should be entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injuries sustained by the insured, caused by the accident, and arising out of the ownership, maintenance, or ... operation of an uninsured automobile.
"5. Plaintiff avers that the Defendant has notice of the accident and of the Plaintiff's claim in the amount of Twenty Thousand Dollars ($20,000.00) and that the Defendant has failed and refused to pay the same."
On April 20, 1983, the trial court submitted the case to the jury. Following their deliberations, the jury returned a verdict for Allstate. Mrs. Whitten filed a motion for a new trial based upon an affidavit of Elizabeth Ann Armstrong, one of the jurors in the case. The motion stated:
"1. That the above styled matter came on for trial on April 18, 1983;
"2. That a jury was impaneled on said date;
"3. That said case was submitted to the jury by the Court on April 20 with no verdict being reached on that date;
"4. That jurors were allowed to return to their homes on the evening of April 20 and to renew deliberations on April 21;
"5. That the evening of April 20 three jurors made an unauthorized examination of the intersection of Decatur Highway and Boydga Road where the accident which is the basis of this suit occurred;
"6. That said jurors went to said scene specifically with the intention of observing the intersection with respect to the deliberations and incorporated said inspection into their deliberation process;
"7. That said visit to the scene was an unauthorized examination by jurors and without authority of the Court or consent of the parties.

*657 "8. That said examination was for the purpose of determining the controverted question of whether the uninsured motorist could have avoided the collision that was made the basis of this suit and that said unauthorized examination amounts to misconduct within the case law of Alabama;
"9. That on April 21 after said examinations occurred the jury returned a verdict for the defendant.
"WHEREFORE, plaintiff urges this Honorable Court to grant a new trial and as grounds therefor says:
"1. That the attached affidavit incorporated and made a part hereto proves that unauthorized examination was made by three jurors of the scene of this collision with regard to a subject of conflicting evidence;
"2. That these jurors did represent as a fact of their own knowledge the results of their visit and examination of this intersection which was not evidence in the case;
"3. That a jury may consider only evidence deduced from the witness stand and law as charged by the Court and no other evidence.
"WHEREFORE, plaintiff prays this Honorable Court to grant a Motion for a New Trial."
After a hearing, the trial court denied the motion for a new trial.
The general rule in Alabama is that affidavits of jurors will not be accepted for the purpose of impeaching their own verdict. Weekley v. Horn, 263 Ala. 364, 365, 82 So.2d 341, 342 (1955). This general rule is subject to an exception which arises when the affidavits tend to show extraneous facts which have influenced the verdict. 263 Ala. at 366, 82 So.2d at 342 (holding that remarks between jurors during their deliberations, even though improper, are not extraneous facts).
Ms. Armstrong stated in her affidavit:
"I found out the next day that during the night three jurors had been to the scene where the traffic accident occurred. Their names are to the best of my knowledge, Connie Bailey, Patricia Jordan and Annette Collins...."
Two other jurors in the case, Connie Bailey and Patricia Ann Jordan, testified at the hearing on the motion for a new trial that they had visited the scene of the accident during an overnight break in the deliberations.
A similar fact situation was before this Court in Allman v. Beam, 272 Ala. 110, 130 So.2d 194 (1961). In that case, a juror took an unauthorized view of the scene of the accident at issue in the lawsuit. This Court found that the extraneous facts exception to the general rule against jurors' impeaching their own verdict was invoked. Under the authority of Allman v. Beam, the evidence of Connie Bailey's and Patricia Ann Jordan's unauthorized views of the accident scene is sufficient to show that extraneous facts were before some members of the jury.
Mrs. Whitten argues that this evidence of the introduction of extraneous facts into the jury's deliberations requires a finding of prejudice as a matter of law. She cites Nichols v. Seaboard Coastline Railway Co., 341 So.2d 671 (Ala.1977). Although the Nichols opinion contains several reasons for the decision to reverse for a new trial on account of juror misconduct, all the Justices agreed (with the exception of Heflin, C.J., who concurred in the result) that prejudice had resulted under the facts of that case. The Court did not hold that prejudice could not be presumed as a matter of law. Six of the Justices agreed in a special concurrence stating that prejudice must be shown; however, that case did not hold that prejudice could not be presumed from extraneous facts as a matter of law.
Nevertheless, this Court recently wrote to that issue in Jones v. McMonigal, 409 So.2d 1381 (Ala.1982). In that case, jurors visited the scene of the accident on which the lawsuit was based, and this Court affirmed the trial court's denial of plaintiff's motion for a new trial, stating:
"While the jurors' conduct was improper, the law in Alabama is that such impropriety *658 must indicate bias or corruption of the jurors or that the misconduct affected the verdict of the jurors before the denial of a motion for new trial becomes reversible error." 409 So.2d at 1382.
That statement of legal principle is, of course, too narrow, for it would prevent the recognition by this Court of instances demonstrated by extraneous matters from which it might be presumed that a party was prejudiced as a matter of law. To the extent that Jones v. McMonigal is so limited, therefore, it is overruled. Juror misconduct will justify a new trial when it indicates bias or corruption, or when the misconduct affected the verdict, or when from the extraneous facts prejudice may be presumed as a matter of law.
Alabama case law appears contradictory on the issue of what a court may consider in determining whether a jury's verdict was unduly prejudiced by extraneous facts.
For example, in Weekley v. Horn, 263 Ala. 364, 366, 82 So.2d 341, 342 (1955), this Court stated that the extraneous facts exception "arises when the affidavits tend to show the extraneous facts which have influenced the verdict." (Emphasis in original.) The juror's affidavit which was offered to impeach the verdict in that case was held to be inadmissible, because it concerned the jury's deliberations. This Court found that those deliberations were not extraneous facts.
The Weekly opinion was cited in Allman v. Beam, supra, 272 Ala. at 115, 130 So.2d at 198, for the following premise: "[T]he general rule is subject to an exception, the exception being that the affidavits tend to show that there were extraneous facts brought before the jury and such extraneous facts influenced the verdict." (Emphasis added.)
In Jones v. McMonigal, supra, two jurors visited the scene of the accident which was the basis of the case on which they were serving. One juror testified that she thought the juror's discussions of those unauthorized views caused some of the other jurors to be biased. The other jurors testified that they were not biased. This Court upheld the trial court's denial of the motion for a new trial.
The trial courts and this Court considered the affidavits of jurors in Allman and Jones to determine the existence of extraneous facts and also to determine prejudice. Leith v. State, 206 Ala. 439, 90 So. 687, (1921), provides ample precedent for the rule applied in Allman and Jones allowing consideration of such affidavits. In Leith, supra, this Court stated:
"In McCormick v. Badham, 204 Ala. 2, 85 South. 401, 407, the authorities are collected to the effect that it is forbidden by public policy to permit a juror to testify as to what transpired between the jurors in their deliberations, or their manner of reaching a verdict on the evidence duly submitted to them on the trial, and that the affidavit of a juror may be received in support of a motion for a new trial, showing extraneous fact which may have influenced their verdict, and which was unduly before members of the jury while deliberating and before verdict rendered." (Emphasis added.) 206 Ala. at 443, 90 So. at 690.
Then the Court went on to discuss the following exception to this general rule:
"It has not been held incompetent to show by members of the jury whether they did read or were influenced by a paper or other extraneous fact that was improperly before them, and not introduced on the trial. McCormick v. Badham, supra; L. & N. R.R. Co. v. Sides, 129 Ala. 399, 403, 29 South. 798; Caldwell v. State, 203 Ala. 412, 420, 84 South. 272; B.R., L. & P. Co. v. Moore [148 Ala. 115, 42 South. 1024]." (Emphasis added.) 206 Ala. at 443, 90 So. at 691.
However, the opinion of this Court in Dulaney v. Burns, 218 Ala. 493, 497, 119 So. 21, 25 (1928), interprets the extraneous facts exception more narrowly than Leith, supra: "In the case of McCormick v. Badham, supra, this court held that a juror, to impeach the verdict, may not testify as to what transpired in their deliberations, further *659 than the fact that extraneous matter was received and read by the jury." This interpretation would limit the use of jurors' affidavits to proof of extraneous matter, and would not allow jurors to state whether or not they were influenced by the extraneous matter.
The Dulaney and Leith decisions both cited an earlier decision, McCormick v. Badham, 204 Ala. 2, 85 So. 401 (1919), but they differ on the law stated in McCormick. Actually, neither Dulaney nor Leith states the law precisely as it appears in McCormick. In that case, this Court stated the general rule prohibiting a juror from testifying about the jury's deliberations and went on to give the following exception: "The affidavit of a juror may, however, be allowed to show extraneous facts which may have influenced their verdict." 204 Ala. at 9, 85 So. at 407. Therefore, McCormick did not specifically allow for jurors to testify concerning the influence of the extraneous matter, as Leith makes it appear; nor did McCormick specifically deny the allowance of jurors' affidavits to determine the influence of extraneous matter, as stated in Dulaney.
The Leith opinion also relies on Louisville & N.R. Co. v. Sides, 129 Ala. 399, 29 So. 798 (1901). In Sides, the brief of defendant's counsel was accidentally placed in the file of papers which went into the jury room when the jury retired to consider their verdict. Affidavits of all jurors serving on the case were considered. Those affidavits showed that the jury did not consider the brief of counsel as evidence in the case and that it did not have any influence or effect upon the verdict. Sides, supra, 129 Ala. at 403, 29 So. at 799. Accordingly, the Court's interpretation of the "extraneous exception" rule as expressed in Leith follows a well-established precedent, and Dulaney, insofar as it contradicts Leith, is hereby overruled.
A review of the affidavits and testimony in the case at bar shows that the jurors were affected in different ways by the unauthorized views of three jurors and the subsequent discussions about those views.
Elizabeth Ann Armstrong stated in her affidavit:
"They [the jurors who viewed the scene] further said that their visit to the scene caused them to change their opinion about the case. Their discussions with me about their visit to the scene caused me to change my decision about the case. I feel that the verdict of the jury was affected by these three jurors visiting the scene of this traffic accident."
Connie Bailey, one of the jurors who visited the scene, testified at the hearing on the motion for a new trial:
"Q. Connie, did your visit to the scene affect your decision in the case?
"A. Yes, sir."
However, she also testified:
"Q. And the photographs showed all the scene of the accident, did it not, please ma'am?
"A. Yes, sir.
". . . .
"Q. (BY MR. McDANIEL:) You did listen to all the evidence in this case, did you not, please, ma'am?
"A. Yes, sir.
"Q. And you followed the evidence in this case and his Honor Judge Callaway's instructions to you, did you not?
"MR. LEE: That goes into the deliberations.
"JUDGE CALLAWAY: Overruled.
"Q. You can answer. You followed His Honor's instructions about this case, did you not?
"A. Yes, sir.
"Q. And you followed the evidence in this case that came from this witness stand under oath, did you not?
"MR. LEE: That requires
"JUDGE CALLAWAY: Overruled.
". . . .
"JUDGE CALLAWAY: Let me ask you something, please ma'am. I don't know whether you can answer this, recall it or not, but was the scene as you saw it on April the 20th of 1983 substantially the same as the scene which was presented *660 to you by pictures that were presented in evidence in the case?
"A. Yes, sir."
Another juror who visited the scene was Patricia Ann Jordan, who testified:
"Q. Okay. Did it look the same to you as the pictures?
"A. Yes, it did.
". . . .
"Q. And the fact that you went out there and anything that you saw, that didn't have anything to do with your decision in this case, did it?
"MR. WININGER: I object. He objected to the same question.
"MR. LEE: He's been objecting to it all along.
"JUDGE CALLAWAY. Overruled.
"MR. JULIANO: You can answer.
"A. It didn't have any effect.
"Q. All right. Would it be an accurate statement that you based your decision on the evidence you heard in the courtroom from the witness stand?
"A. Yes, it would.
"MR. WININGER: Object.
"Q. And in addition to the law that the Judge instructed the jury on?
"A. Yes."
Several other jurors stated in their affidavits that their decision was based upon the evidence presented in the case and that they were not influenced by the discussions among the jurors of the unauthorized views.
In Reed v. L. Hammel Dry Goods Co., 215 Ala. 494, 497, 111 So. 237, 239-40 (1927), this Court observed:
"The action of a juror in going by the store and viewing the locus in quo during the recess of the court, and while the jury was considering their verdict, is shown to have been without knowledge or suggestion of any party. While improper, no corrupt motive appears. It further appears the verdict was not influenced thereby; that the juror learned no new fact, but merely saw the same conditions already shown by photographs in evidence ....
"... Parties should not be penalized for the thoughtless conduct of a juror, unless under all the circumstances the ends of justice require it. Clay v. City of Montgomery, 102 Ala. 297, 14 So. 646; Ala. Power Co. v. Hall, 212 Ala. 638, 103 So. 867; Leith v. State, 206 Ala. 439, 90 So. 687; B.R. & E. Co. v. Mason, 144 Ala. 387, 39 So. 590, 6 Ann.Cas. 929; L. & N. R.R. Co. v. Sides, 129 Ala. 399, 29 So. 798."
The case at bar is distinguishable from Reed, supra, because in that case there was no evidence of prejudice. In the case before us, Connie Bailey and Patricia Ann Jordan both testified that the scene of the accident appeared the same as the scene which was admitted into evidence by photographs. However, Connie Bailey, at the hearing, and Elizabeth Ann Armstrong, in her affidavit, each said that she was influenced to change her decision about the case by the extraneous material which was before the jury. The record shows that no evidence was offered to contradict these statements. For example, no evidence was offered showing that these two jurors voted the same way before and after the unauthorized views and discussions about them took place. Therefore, the evidence is undisputed that these two jurors were influenced to change their decisions about the case by the extraneous material which was before them.
On the basis of these undisputed facts, we conclude that the trial court could not have found that the effect of the unauthorized views and the discussions about them were not prejudicial. It follows that the trial court's ruling which denied Mrs. Whitten's motion for a new trial must be reversed and the cause remanded. It is so ordered.
REVERSED AND REMANDED.
All the Justices concur except FAULKNER, J., who dissents.
FAULKNER, Justice (dissenting).
I dissent.
*661 Jones v. McMonigal, 409 So.2d 1381 (Ala. 1982), is a correct statement of the law and should not be overruled or even modified as held by the majority.
The evidence and logic used by the majority to reverse the ruling of the trial judge in this case are less than substantial. Moreover, to reverse the trial judge in this case is a message to him that "Whatever you did at the trial with facts and evidence, we can do it better."
The majority premises its holding on the affidavit of Elizabeth Ann Armstrong and the testimony of Patricia Jordan and Connie Bailey. The majority states that these jurors were influenced to change their decision by a visit to the scene of the accident.
Connie Bailey's testimony does not reveal that her visit to the scene affected her decision at all. On the contrary she testified that she followed the trial judge's instructions, and that the scene of the accident was substantially the same as the scene presented by the photographs. Patricia Ann Jordan, who also visited the scene of the accident, stated categorically in her testimony at her hearing on the post-trial motion that her visit to the scene did not have any effect on her decision.
The majority further states, "Several other jurors stated in their affidavits that their decision was based upon the evidence presented in the case and they were not influenced by the discussions among the jurors of the unauthorized views." I do not know how to count "several" in arriving at the number 12, but jurors Bibeau, Ferguson, Fox, and Hayes must have been among those counted. They testified they were not affected. I do not know whether Annette Collins, who also visited the scene of the accident with Connie Bailey and Patricia Jordan, was affected by the visit. There is no mention of her by the majority.
So, two out of the three jurors who visited the scene of the accident testified at the motion for new trial that their decision was not affected by their visit. It is not known whether the third visitor was affected. That brings me to the affidavit of Elizabeth Ann Armstrong. In the stark reality of the testimony of Patricia Jordan and Connie Bailey that they were not affected by their visit to the scene of the accident, Ms. Armstrong stated, "They [the jurors who viewed the scene] further said that their visit to the scene caused them to change their opinion about the case." Obviously, Ms. Armstrong must not have been aware of the testimony of visitors Jordan and Bailey. She says that their discussions with her caused her to change her decision. It appears to be strange indeed, that she changed her decision, and yet Jordan and Bailey did not change theirs.
There is simply not sufficient evidence to support the majority's conclusion that there was any bias or prejudice on the part of the jurors in reaching their verdict. There is not sufficient evidence that their verdict was affected by the jurors' visit to the scene. The trial judge was certainly in a better position to weigh the evidence and to determine whether there was any bias or prejudice because of the misconduct of the three jurors, and I do not think he committed error by overruling the motion for new trial. I would affirm.