These cases concern the misidentification of the bodies of two young men who were killed in a one-car accident in Mobile County, Alabama, on October 31, 1987. The plaintiffs and one defendant appeal from the granting of a new trial on the grounds of juror misconduct. We affirm in part and reverse in part.
John Randall Robertson and Robert Lynn Brantley were killed when the Pontiac *Page 681 
Firebird automobile in which they were riding left the road and crashed into a pecan tree. Their bodies were sent to the University of South Alabama Medical Center by two state troopers, who removed their identification. When the bodies arrived at the emergency room, there was nothing on them to tell which body was which. Identifying toe tags were placed on the bodies at the hospital by Nurse Cherie Jordan. She testified that she placed the toe tags on the bodies based on the information she received from the state trooper radio dispatcher. However, there was a mix-up, and the bodies were misidentified. As a result, when the Brantleys went to the funeral home to view their son's open casket, they discovered the body of the Robertson boy. The Robertsons had buried the Brantley boy in a closed casket.
After the discovery of the misidentification, Bobby J. Brantley and Dorothy Robertson each filed a complaint (the complaints were later consolidated) against State Trooper E.L. Chunn, State Trooper E. Bush, Nurse Cherie Jordan, and certain other named defendants.[1] Their complaints alleged that the defendants had negligently and/or wantonly misidentified the bodies of the dead boys, and, as a result, had caused severe emotional pain and suffering to the plaintiffs.
The case was tried to a jury on November 13, 1990. Following the presentation of the evidence, the trial judge charged the jury and submitted the negligence claims to it. The jury returned a verdict of $100,000 in favor of each plaintiff against the two state troopers. The jury found in favor of defendant Cherie Jordan.
On November 19, 1990, the trial judge held additional proceedings and informed counsel for the parties as follows:
 "We have all the attorneys here now. Mrs. Straub, after the case was over, I called her back to the office to thank her for having assisted in resolving an extremely difficult case. If y'all remember, the jury did have a time. I think she was working real hard. She said, yes, fine and good. I said fine, I just wanted to thank you. We will look forward to seeing you when you come down in another couple of years. And she was walking out of the door. She said, what really helped me get this thing solved is I had this dictionary with me. I thought, oh my God. As she was walking out, I said, how did you carry the dictionary in? She showed me. It was out in just plain view. I assumed that if anyone saw it you would just assume it was a reading book or something she was taking in. And after all the efforts y'all have put in this case I really just don't know what to do. I feel I had to let y'all know what had happened."
Defendants Chunn and Bush then filed a motion for j.n.o.v. or, in the alternative, a new trial.[2] Plaintiffs Bobby Brantley and Dorothy Robertson also filed motions for a new trial. Nurse Cherie Jordan filed a response to the plaintiff's motions for a new trial and a brief in opposition to them.
The trial judge heard oral argument on the motions on January 4, 1991. He granted a new trial, based on this Court's decision in Nowogorski v. Ford Motor Co., 579 So.2d 586 (Ala. 1990). Cherie Jordan filed a motion to reconsider the granting of a new trial, which was denied by the trial court. Defendant Cherie Jordan[3] and plaintiffs Bobby J. Brantley and Dorothy A. Robertson[4] appeal. *Page 682 
We first consider whether the trial court erred in granting a new trial on the basis of juror misconduct. In Nowogorski v.Ford Motor Co., supra, at 589, this Court quoted the rule as to juror misconduct, stated in Whitten v. Allstate Ins. Co.,447 So.2d 655 (Ala. 1984):
 "Juror misconduct will justify a new trial when it indicates bias or corruption, or when the misconduct affected the verdict, or when from the extraneous facts prejudice may be presumed as a matter of law."
Id. at 658. In Nowogorski this Court said, "It is well settled, that if the verdict could have been affected by the juror misconduct, then a new trial is justified." 579 So.2d at 590.
We have carefully considered the record in this case. We conclude that the trial court could not have found that the extraneous material was not prejudicial, because there was undisputed evidence that the extraneous material had influenced jurors. It is not disputed that, on the second day of deliberation, the foreperson of the jury took a dictionary into the jury room. The explanation given in the affidavits of the jurors was that on the first day of deliberation the jury had unanimously agreed to render a verdict in favor of the plaintiffs against the state troopers, but that they had been divided as to whether to render a verdict against Nurse Cherie Jordan, because they could not agree as to whether she had been "prudent" and "reasonable" in her identification of the bodies.
On the morning of the second day, the foreperson of the jury used the dictionary to look up the meaning of these words and discussed the meanings contained in the dictionary with the other members of the jury. Although some jurors stated in their affidavits that they were not influenced by the use of the dictionary, the facts show that they were. The affidavit of James David Mills, an attorney who served as a juror, states that "[t]erms such as negligence, reasonableness, and other terms having a legal impact were discussed as well as the definition of those terms given by the dictionary."
The evidence reflects that the jury had not been able to reach a verdict until the dictionary was used. The terms "prudent" and "reasonable" were crucial in resolving a key material issue in the case. In addition, the foreperson told the trial judge that the dictionary definitions influenced the jury. Thus, the trial court could reasonably find that the introduction of the extraneous matter into the jury deliberations was prejudicial.
Nurse Cherie Jordan argues that the granting of a new trial was unconstitutional "in the absence of evidence or substantial evidence that any single juror was influenced or that the plaintiff was prejudiced by the presence of a dictionary in the jury room." Obviously, we must reject the argument that the grant of a new trial was improper, because there is substantial evidence of such influence. We affirm the order granting a new trial, on the authority of Hallmark v. Allison, 451 So.2d 270
(Ala. 1984); Nichols v. Seaboard Coastline Ry., 341 So.2d 671
(Ala. 1976); and Nowogorski v. Ford Motor Co., supra.
Nurse Jordan argues further that the trial court erred in failing to grant her motion for a directed verdict. She contends that she presented competent expert testimony that she did not deviate from the appropriate standard of nursing care, and she contends that the plaintiffs failed to offer competent expert testimony that she did deviate from the standard of care. We agree.
Regarding a motion for a directed verdict, this Court has held:
 " 'There are only two situations in which a directed verdict is proper: (1) where there is no scintilla of evidence to support an element essential to the claim or (2) where there is no disputed issue of fact upon which reasonable men could differ. Caterpillar Tractor Co. v. Ford, *Page 683 406 So.2d 854, 856 (Ala. 1981). A directed verdict is appropriate in the second situation only if the facts and inferences point so strongly and overwhelmingly in one party's favor that reasonable persons could only arrive at one verdict. Bickford v. International Speedway Corp., 654 F.2d 1028, 1031 (5th Cir. 1981).' Osborn v. Johns, 468 So.2d 103 (Ala. 1985)."
Dobbs v. Alabama Power Co., 549 So.2d 35 (Ala. 1989).
Under the Alabama Medical Liability Act, § 6-5-480 et seq., Nurse Jordan is a "health care provider." Section 6-5-481(8) reads:
 "(8) OTHER HEALTH CARE PROVIDERS. Any professional corporation or any person employed by physicians, dentists or hospitals who are directly involved in the delivery of health care services."
In a case governed by the Act, the plaintiff must offer expert medical testimony as to what is or what is not the proper standard of care, and the lack of such testimony results in the lack of proof essential to establish the plaintiff's case.Rosemont, Inc. v. Marshall, 481 So.2d 1126, 1129 (Ala. 1985);Gilbert v. Campbell, 440 So.2d 1048, 1049 (Ala. 1983); Moses v.Gaba, 435 So.2d 58 (Ala. 1983).
The record reflects that a directed verdict was appropriate in this case. Nurse Jordan presented the testimony of Cynthia Lynn Gurdak, a clinical nurse specialist, who testified that in her opinion, to a reasonable degree of medical certainty, Nurse Jordan did not deviate from the proper standard of care in placing the identification on the bodies. Nurse Gurdak testified that she had worked in the emergency rooms at the University of Alabama Hospital in Birmingham and the Washington Hospital Center in the District of Columbia. She had approximately 13 years of experience as a nurse dealing with trauma and burns and approximately two years of experience in emergency room work at the time of her testimony.
Nurse Jordan testified that she filled out the toe tags on the two bodies on the night in question with the information that she received from the state trooper's office. She was relying upon the information she received from the state trooper radio dispatcher regarding the identity of the bodies. All identification had been removed from the bodies by the state troopers. Nurse Gurdak testified as an expert witness that it was reasonable to rely upon information from state troopers via state trooper dispatchers. In her opinion, Nurse Jordan did not deviate from the standard of care.
The plaintiffs presented the testimony of Mildred Wood, a registered nurse, who testified that in her opinion Nurse Jordan deviated from the proper standard of care. However, Mrs. Wood had not worked in a hospital in the three years prior to the date of the trial. She admitted candidly that she was not an expert in emergency room procedures. She had never been assigned to work full time in an emergency room.
Because the only evidence that Nurse Jordan deviated from the standard of care came from one who is not an expert in emergency room procedures, we find that the trial court erred in failing to direct a verdict for Nurse Jordan.
For the reasons stated above, the order of the trial court granting a new trial is due to be affirmed. We reverse the trial court's denial of a directed verdict in favor of Nurse Jordan.
AFFIRMED IN PART; AND REVERSED IN PART.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.
[1] Defendants University of South Alabama Medical Center, the Alabama Department of Public Safety, the Alabama Department of Forensic Sciences, Dr. Gary Cumberland, Dr. Leroy D. Riddick, Serenity Gardens Funeral Home, and Mobile Memorial Gardens Funeral Home were either granted summary judgment or dismissed from the case. Defendant Radney Funeral Home entered into a pro tanto settlement agreement with Plaintiff Brantley and a stipulation of dismissal was filed.
[2] The troopers entered into a pro tanto settlement with plaintiff Brantley on December 18, 1990, and their motions for new trials were rendered moot.
[3] On appeal, Nurse Jordan contends that the trial court erred in failing to direct a verdict in her favor and in granting the plaintiffs motion for a new trial on the basis of juror misconduct.
[4] On appeal, the plaintiffs concede that the trial court did not err in granting a new trial on the grounds of juror misconduct. Brantley argues that the trial court erred in instructing the jury that the Alabama Medical Liability Act required expert testimony in order for the plaintiffs to prove their case. *Page 684